UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:23-cv-24815-BB

**ISAAC HERES,**

    Plaintiff,

v.

**JURY TRIAL DEMANDED**

**MEDICREDIT INC,**

    Defendant.
_____/

## FIRST AMENDED COMPLAINT

Plaintiff Isaac Heres ("Plaintiff") sues MediCredit Inc ("Defendant") for violations of the Fair Debt Collection Practices Act ("FDCPA"),

### JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 15 U.S.C. §1692k(d), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

2. Venue in this District is proper because Plaintiff resides here, Defendant transacts business here, and the complained of conduct of Defendant occurred here.

### PARTIES

3. Plaintiff is a natural person, and a citizen of the State of Florida, residing in Broward County, Florida.

4. Defendant is a Missouri corporation, with its principal place of business located in Earth City Missouri.

### DEMAND FOR JURY TRIAL

5. Plaintiff, respectfully, demands a trial by jury on all counts and issues so triable.

## ALLEGATIONS

6. At all times material, Plaintiff was an employee of In Gear Fashion ("IGF").

7. On January 3, 2021, in the course and scope of Plaintiff's employment at IGH, a forklift ran over Plaintiff and shattered the bones in Plaintiff's right leg, right ankle, and right foot (the "Workplace Injury").

8. Attached as Exhibit "A" is a copy of the initial Petition for Workers' Compensation Benefits (the "Initial PFB") filed by Plaintiff with the Office of Judges of Compensation Claims January 25, 2021.

9. The Initial PFB, as attached, is a matter of public record.

10. Pursuant to the Initial PFB, Plaintiff sought an order requiring IGF and/or IFG's insurance carrier, AmTrust North America Florida ("AmTrust"), to provide benefits due under Chapter 440, Florida Statues.

11. The Initial PFB detailed description of the accident provides:

> [Plaintiff] WENT TO WORK AT THE WAREHOUSE AND WAS ASSISTING A CO-EMPLOYEE THROWING OUT TRASH WHEN HE JUMPED OFF THE FORKLIFT WHILE IT WAS STOPPED. THE CO-EMPLOYEE DID NOT NOTICE [Plaintiff] GOT OFF THE FORKLIFT AND ACCELERATED THE FORKLIFT RUNNING OVER [Plaintiff]'S RIGHT LOWER EXTREMITY SHATTERING HIS BONES IN HIS RIGHT LEG, RIGHT ANKLE AND RIGHT FOOT.

Initial PFB.

12. On July 1, 2021, Plaintiff sought emergency treatment for the Workplace Injury at Aventura Hospital and Medical Center.

13. Aventura Hospital and Medical Center is a medical facility that provides, among other things, emergency medical services to the public.

14. Aventura Hospital and Medical Center ("Aventura Hospital") is the *doing business as* and/or *fictious name* of Miami Beach Healthcare Group LTD ("Miami Healthcare").

15. Aventura Hospital is owned and operated by Miami Healthcare.

16. While at Aventura Hospital, it was determined that emergency surgery was needed to treat the Workplace Injury.

17. Oleta River Emergency Physicians LLC ("ORE Physicians") provided medical services to Plaintiff for the treatment of the Workplace Injury on July 1, 2021.

18. ORE Physicians knew the medical services it provided Plaintiff on July 1, 2021, were for the treatment of a workplace injury sustained by Plaintiff on January 3, 2021, because such information was contained in the medical records reviewed by ORE Physicians before ORE Physicians rendered medical services to Plaintiff on July 1, 2021, and because the contemporaneous medical records authored by ORE Physicians indicate the services provided were for the treatment of a workplace injury sustained by Plaintiff on January 3, 2021.

19. ORE Physicians knew that payment for medical services rendered to an employee for the treatment of a workplace injury is the financial responsibility of the employer or the employer's insurance carrier.

20. ORE Physicians knew Plaintiff was not financially responsible for the treatment of the Workplace Injury.

21. On July 14, 2021, ORE Physicians submitted a Health Insurance Claim Form to AmTrust seeking payment in the amount of $ 2,053.00 for the medical services ORE Physicians rendered to Plaintiff on July 01, 2021, for the treatment of the Workplace Injury.

22. Miami Healthcare provided medical services to Plaintiff for the treatment of the Workplace Injury on July 1, 2021.

23. Miami Healthcare knew the medical services it provided Plaintiff on July 1, 2021, were for the treatment of a workplace injury sustained by Plaintiff on January 3, 2021, because such information was contained in the medical records reviewed by Miami Healthcare before Miami Healthcare rendered medical services to Plaintiff on July 1, 2021, and because the contemporaneous medical records authored by Miami Healthcare indicate the services provided were for the treatment of a workplace injury sustained by Plaintiff on January 3, 2021.

24. Miami Healthcare knew that payment for medical services rendered to an employee for the treatment of a workplace injury is the financial responsibility of the employer or the employer's insurance carrier.

25. Miami Healthcare knew Plaintiff was not financially responsible for the treatment of the Workplace Injury.

26. Miami Healthcare knew that it did not have any statutory or contractual right to attempt to collect the Medical Debt from Plaintiff because Florida law shields an employee from financial responsibility.

27. Despite knowing Plaintiff was not financially responsible for the treatment of the Workplace Injury rendered by Miami Healthcare on July 1, 2021, Miami Healthcare sent Plaintiff a bill, internally dated September 28, 2021, for the medical services rendered on July 1, 2021, for the treatment of the Workplace Injury.

28. Attached as Exhibit "B" is a copy of the bill, internally dated September 28, 2021, Miami Healthcare sent Plaintiff (the "Medical Bill").

29. The Medical Bill demanded payment of $1,337.33 for the medical services rendered on July 1, 2021, from Plaintiff (the "Medical Debt").

30. The Medical Bill states the subject account number is 39759381.

31. In the Medical Bill, Miami Healthcare made clear it was demanding $1,337.33 from Plaintiff directly by stating "*Total Amount For Hospital Services is the total amount the hospital expects to receive for services after all discounts have been applied,*" "*the amount you owe may include copay, deductibles or non-covered charges*," and in bold red text "**AMOUNT YOU OWE $1,337.33**." Medical Bill.

32. The Medical Bill caused Plaintiff waste time, as well as lose sleep, because the language used in the Medical Bill caused Plaintiff mistakenly to believe he was responsible for the Medical Debt.

33. Plaintiff lost sleep on at least one occasion as a result of the Medical Bill.

34. On January 12, 2022, Plaintiff's workers' compensation benefits case, OJCC Case No 21-001836SMS, was resolved, whereby AmTrust and/or IGC **remained** responsible for medical care rendered through December 8, 2021.

35. On February 21, 2022, Plaintiff filed suit against Miami Healthcare in Miami-Dade County Court (case no 2022-005946-CC-05) ("State Lawsuit") for, among other things, unlawfully demanding payment from Plaintiff for the Workplace Injury and harm suffered by Plaintiff as a result of the Medical Bill.

36. In the course of the State Lawsuit, Miami Healthcare was informed that the Medical Debt was AmTrust and/or IGC financial responsibility because the underlying medical services were for the treatment of the Workplace Injury.

37. At minimum, in the course of the State Lawsuit, Miami Healthcare knew that it (Miami Healthcare) could not lawfully demand payment from Plaintiff for the medical services it rendered to Plaintiff on July 1, 2021.

38. At minimum, in the course of the State Lawsuit, Miami Healthcare knew that AmTrust and/or IGC were financial responsibility for the Medical Debt.

39. On October 28, 2022, Plaintiff and Miami Healthcare reached settlement in the State Lawsuit.

40. Despite the resolution of the State Lawsuit, of which crystallized for Miami Healthcare that it could not attempt to collect the Medical Debt from Plaintiff, Miami Healthcare contracted with Defendant to collect the Medical Debt from Plaintiff.

41. Defendant is a business entity engaged in the business of soliciting consumer debts for collection.

42. Defendant is a business entity engaged in the business of collecting consumer debts.

43. Defendant regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

44. Defendant is registered with the Florida Office of Financial Regulation as a "Consumer Collection Agency."

45. Defendant's "Consumer Collection Agency" license number is CCA0900581.

46. Defendant maintains all the records specified in Rule 69V-180.080, Florida Administrative Code.

47. The records specified by Rule 69V-180.080, Florida Administrative Code, of which Defendant does maintain, are current to within one week of the current date.

48. For Defendant's "Consumer Collection Agency" license to remain valid, Defendant is required to maintain, *at minimum*, all records specified in Rule 69V-180.080, Florida Administrative Code, and keep such records current within one week of the current date.

49. Rule 69V-180.080(3)(e) of the Florida Administrative Code commands that Defendant *shall* maintain: "[t]he debtor's account of activity disclosing… a record of payments made by the debtor, including the date received and the amount and balance owing."

50. Rule 69V-180.080(9)(a)-(b) of the Florida Administrative Code commands that Defendant *shall* maintain: "basic information about the debt including, at minimum… [d]ocumentation of the debt provided by the creditor," as well as "[t]he date the debt was incurred and the date of the last payment."

51. Defendant, by way of the records which it (Defendant) is required to maintain to retain a valid Consumer Collection Agency license with the Florida Department of State, knew that the Medical Debt arose from the treatment of the Work-Injury and otherwise knew that it (Defendant), as well as Care Provider, did not have any statutory or contractual right to attempt to collect the Medical Debt from Plaintiff.

52. Defendant knew that it did not have any statutory or contractual right to attempt to collect the Medical Debt from Plaintiff because Florida law shields an employee from financial responsibility.

53. On a date better known to Defendant, Defendant sent a collection letter, internally dated July 29, 2023, to Plaintiff (the "Collection Letter") in an attempt to collect the Medical Debt. Attached as Exhibit "C" is a copy of the Collection Letter.

54. The Collection Letter states the account number associated with the Medical Debt is 39759381.

55. The Collection Letter demands payment from Plaintiff for the Medical Debt.

56. The Collection Letter is a communication from Defendant to Plaintiff in connection with the collection of a debt.

57. The Collection Letter represents an action to collect a debt by Defendant.

58. Plaintiff received and reviewed the Collection Letter.

59. The Collection Letter caused Plaintiff to waste time, as well as lose sleep, because Miami Healthcare knew Plaintiff was not responsible for the Medical Debt, yet Defendant was still trying to collect the Medical Debt from Plaintiff.

60. The Collection Letter caused Plaintiff to believe that Defendant was retaliating against Plaintiff on behalf of Miami Healthcare for the State Lawsuit.

61. Plaintiff could not afford to pay the Medical Debt.

62. Plaintiff spent hours anxiously worrying about how he could pay the Medical Debt, as well as lost sleep over the matter, as a result of the Collection Letter.

63. The Collection Letter disrupted and intruded upon Plaintiff's solitude and peace at home by unlawfully sending a letter to Plaintiff's home address demanding payment of the Medical Debt.

64. The Collection Letter caused Plaintiff to falsely believe the Medical Debt was Plaintiff's financial responsibility.

65. The Collection Letter caused Plaintiff to lose at least one night of sleep.

66. Plaintiff expended time and money delivering the Collection Letter to the attorney handling Plaintiff's worker's compensation case, as Plaintiff anxiously needed feedback regarding the Medical Debt demanded in the Collection Letter

67. Defendant lacks policies and procedures reasonably adapted to prevent demanding payment from injured employees for medical services provided to an employee for the treatment of a workplace injury.

## COUNT 1
## **VIOLATION OF 15 U.S.C. § 1692e(2)(A)**

68.     Plaintiff incorporates by reference paragraphs 6 through 67 of this Amended Complaint.

69.     Pursuant to Fla. Stat. § 440.13(2)(a), an injured employee is entitled to "such medically necessary remedial treatment, care, and attendance for such period as the nature of the injury or the process of the recovery may require…."

70.     Pursuant to Fla. Stat. § 440.13(13)(a), "[a] health care provider may not collect or receive a fee from an injured employee within this state, except as otherwise provided by this chapter. Such providers have recourse against the employee or carrier for payment for services rendered in accordance with this chapter."

71.     An employee is shielded from liability in any dispute between the employer or carrier and health care provider regarding reimbursement for the employee's authorized medical or psychological treatment. *See generally* Fla. Stat. § 440.13.

72.     Section 1692e of the FDCPA prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. The sixteen subsections of § 1692e set forth a non-exhaustive list of practices that fall within this ban, including, but not limited to: "*[t]he false representation of the character, amount, or legal status of any debt*." 15 U.S.C. § 1692e(2)(A). (emphasis added).

73.     As stated above, Defendant sent the Collection Letter to Plaintiff in an attempt to collect the Medical Debt. The Collection Letter falsely represents that Plaintiff is responsible for the repayment of the Medical Debt. Here, Plaintiff is not liable or otherwise responsible for the payment of the medical services rendered by Miami Healthcare, as such medical services were rendered to Plaintiff as a result of a work-related injury sustained by Plaintiff.

74. Defendant, by and through the Collection Letter, falsely represents the character of the Medical Debt, *in that*, the Collection Letter falsely represents Medical Debt as a debt which Plaintiff is solely responsible and/or otherwise obligated to pay.

75. Further, by and through the Collection Letter, Defendant *falsely* represents the amount of the Medical Debt, *in that*, the amount sought by the Collection Letter exceeds the amount which Miami Healthcare is entitled pursuant to the fee schedules and/or guidelines for services rendered to injured workers such as Plaintiff.

76. Thus, by and through the Collection Letter, Defendant violated § 1692e and § 1692e(2)(A) of the FDCPA by falsely representing the Medical Debt as Plaintiff's personal responsibility, falsely representing the *character* of the Medical Debt, as well as by falsely representing the *amount* of the Medical Debt.

77. WHEREFORE, Plaintiff, respectfully, requests this Court to enter a judgment against Defendant, awarding Plaintiff the following relief:

(a) Statutory and actual damages as provided by 15 U.S.C. § 1692k;

(b) Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k; and

(c) Any other relief that this Court deems appropriate under the circumstances.

DATED: January 25, 2024

Respectfully Submitted,

/s/ Thomas Patti
**THOMAS PATTI, ESQ.**
Florida Bar No. 118377
E-mail:   Tom@pzlg.legal
PATTI ZABALETA LAW GROUP
110 SE 6th Street Suite 1732
Fort Lauderdale, Florida 33309
Phone:   561-542-8550

*COUNSEL FOR PLAINTIFF*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 25, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

 /s/ Thomas J. Patti
**THOMAS J. PATTI, ESQ.**
Florida Bar No.: 118377