### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

**Case No. 1:23-cv-24815-BB**

ISAAC HERES,

     Plaintiff,

v.

MEDICREDIT INC,

     Defendant.

_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION TO
### MEDICREDIT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

     Plaintiff Isaac Heres ("Plaintiff" or "Heres") submits this Response in Opposition with respect to the Motion to Dismiss (Doc. 13) filed by Defendant MediCredit Inc ("Defendant" or "MediCredit") on February 8, 2024, directed as the First Amended Complaint [Doc. 11] (the "FAC") and, in support thereof, states:

**1.**      **BACKGROUND**

     1.      On January 3, 2021, Plaintiff was injured in a work-related accident when a "forklift ran over Plaintiff and shattered the bones in Plaintiff's right leg, right ankle, and right foot." FAC at 2, ¶ 7. On July 1, 2021, Plaintiff received emergency medical treatment for the work-related injury from Miami Beach Healthcare Group LTD *doing business as* Aventura Hospital and Medical Center ("Miami Healthcare"). FAC at 2-3, ¶¶ 12-16. Miami Healthcare knew the medical services it provided to Plaintiff on July 1, 2021, were for the treatment of a workplace injury because "such information was contained in the medical records reviewed by Miami Healthcare before Miami Healthcare rendered medical services to Plaintiff on July 1, 2021, and because the contemporaneous medical records authored by Miami Healthcare indicate the services provided were for the treatment of a workplace injury." FAC at 3, ¶ 23.

     2.      Despite knowing it could not bill Plaintiff for the treatment of the work-related injury, Miami Healthcare sent Plaintiff a bill dated September 28, 2021, of which demanded $1,337.33 from Plaintiff (the "Medical Debt"), in an attempt to collect the corresponding debt. FAC at 4, ¶ 24-28.

3.      On January 12, 2022, Plaintiff's workers' compensation benefits case, OJCC Case No 21-001836SMS, was resolved, whereby Plaintiff's employer, In Gear Fashion ("IGF"), and/or the employer's insurance carrier, AmTrust, remained responsible for, among other things, the medical services rendered by Miami Healthcare. <u>FAC</u> at 6, ¶ 36.

4.      On February 21, 2022, Plaintiff filed suit against Miami Healthcare in Miami-Dade County Court (case no 2022-005946-CC-05) ("State Lawsuit") for, among other things, unlawfully demanding payment from Plaintiff and for the resulting harm suffered by Plaintiff. <u>FAC</u> at 5, ¶¶ 31-35. In the course of the State Lawsuit, it became abundantly known by Miami Healthcare that Plaintiff *was not responsible* for the Medical Debt and that IGF and/or AmTrust *was responsible* for the Medical Debt. <u>FAC</u> at 5-6, ¶¶ 36-38.

5.      On October 28, 2022, Plaintiff and Miami Healthcare reached settlement in the State Lawsuit. <u>FAC</u> at 6, ¶ 39. Despite the resolution of the State Lawsuit, of which crystallized for Miami Healthcare that it could not attempt to collect the Medical Debt from Plaintiff, Miami Healthcare hired MediCredit to collect the Medical Debt from Plaintiff. <u>FAC</u> at 6, ¶ 40. MediCredit proceeded to send Plaintiff a collection letter, dated July 29, 2023 (the "Collection Letter") in an attempt to collect the Medical Debt from Plaintiff directly. <u>FAC</u> at 7, ¶ 53.

6.      "The Collection Letter caused Plaintiff to waste time, as well as lose sleep, because Miami Healthcare knew Plaintiff was not responsible for the Medical Debt, yet [MediCredit] was still trying to collect the Medical Debt from Plaintiff." <u>FAC</u> at 8, ¶ 59. "The Collection Letter caused Plaintiff to believe that MediCredit was retaliating against Plaintiff on behalf of Miami Healthcare for the State Lawsuit." <u>FAC</u> at 8, ¶ 60. "Plaintiff spent hours anxiously worrying about how he could pay the Medical Debt, as well as lost sleep over the matter, as a result of the Collection Letter." <u>FAC</u> at 8, ¶ 62. MediCredit "disrupted and intruded upon Plaintiff's solitude and peace at home by unlawfully sending a letter to Plaintiff's home address demanding payment of the Medical Debt." <u>FAC</u> at 8, ¶ 63. "[T]he Collection Letter caused Plaintiff to falsely believe the Medical Debt was Plaintiff's financial responsibility." <u>FAC</u> at 8, ¶ 64. "The Collection Letter caused Plaintiff to lose at least one night of sleep." <u>FAC</u> at 8, ¶ 65. "Plaintiff expended time and money delivering the Collection Letter to the attorney handling Plaintiff's worker's compensation case, as Plaintiff anxiously needed feedback regarding the Medical Debt demanded in the Collection Letter. <u>FAC</u> at 8, ¶ 66.

7.      On December 19, 2023, Plaintiff commenced the above-captioned action against MediCredit alleging it (MediCredit) violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.,* specifically, § 1692e(2)(A), which prohibits "[t]he false representation of the character, amount, or legal status of any debt" based on MediCredit's attempt to collect a debt, by and through the Collection Letter, *see* Doc. 11-3, for which Plaintiff was not legally responsible under Florida's Workers' Compensation Law. On January 25, 2024, Plaintiff filed his First Amended Complaint, Doc. 11, and on February 08, 2024, Defendant filed the Motion to Dismiss, Doc. 13, currently pending before this Court, of which is the subject of this Response in Opposition.

8.      In its operative Motion to Dismiss, Doc. 13 (the "MTD" or "MediCredit's Motion"), MediCredit proffers two arguments.

9.      **First**, MediCredit argues lack of standing (the "First Argument"). *See* MTD at 2, ¶ 5 ("The [FAC] fails to provide factual allegations that Plaintiff sustained actual damages, much less a concrete injury-in-fact caused by Medicredit").

10.     **Second**, MediCredit argues Plaintiff failed to state a claim (the "Second Argument"). *See* MTD at 2, ¶ 6 ("the [FAC] in this case lacks sufficient factual allegations to support a conclusion that Medicredit violated the FDCPA as a matter of law.").

11.     For the reasons detailed below, this Court should deny MediCredit's Motion in its entirety because Plaintiff has standing to sue MediCredit in federal court and because Plaintiff sufficiently plead a *prima facie* case for violation of the FDCPA.

**2.          <u>STANDARD OF REVIEW</u>**

12.     To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (abrogating Conley, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (*citing* Twombly, 550 U.S. at 556). The allegations of the claim must be taken

as true and must be read to include any theory on which the plaintiff may recover. *See* <u>Linder v. Portocarrero</u>, 963 F. 2d 332, 334-36 (11th Cir. 1992) (*citing* <u>Robertson v. Johnston</u>, 376 F. 2d 43 (5th Cir. 1967)).

13.      However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." <u>Iqbal</u>, 129 S. Ct. at 1949. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" <u>Twombly</u>, 550 U.S. 544 at n. 8 (*quoting* <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974), overruled on other grounds, <u>Davis v. Scherer</u>, 468 U.S. 183, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984)).

14.      In deciding a motion to dismiss, the Court must accept a complaint's well-pled allegations as true. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). Such allegations must be construed in the light most favorable to the Plaintiff. <u>Am. Dental Ass'n v. Cigna Corp.</u>, 605 F.3d 1283, 1288 (11th Cir.2010). "In analyzing the sufficiency of the complaint, [the Court] limit[s] [its] consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir.2004).

**3.**          **ARGUMENT**

15.      MediCredit's First Argument – that Plaintiffs lacks standing to peruse his case in federal court because "the [FAC] does not allege any facts that would support an inference that Plaintiff has suffered a tangible injury or the conclusion of actual damages," <u>MTD</u> at 5 – presents a threshold question of subject matter jurisdiction. *See* <u>Dillard v. Chilton Cnty. Comm'n</u>, 495 F.3d 1324, 1330 (11th Cir. 2007) ("[S]tanding is a threshold jurisdictional question which must be addressed . . . independent of the merits of a party's claims." (cleaned up)).

16.      In light of the threshold nature of MediCredit's standing challenge, it must first be determined whether Plaintiff has standing to sue MediCredit in federal court before discussing whether Plaintiff sufficiently plead a *prima facie* case for the alleged violation of the FDCPA. As shown below, Plaintiff has standing based on multiple different tangible and intangible injuries and Plaintiff sufficiently plead a *prima facie* case for violation of the FDCPA.

3.1            <u>**PLAINTIFF HAS STANDING TO PURSUE HIS CLAIM**</u>

17.      "The requisite elements of Article III standing are well established…." <u>Fed. Election Comm'n v. Cruz,</u> 142 S. Ct. 1638, 1646, 212 L. Ed. 2d 654 (2022). The plaintiff must show (1) an "**injury in fact**," *i.e.*, "that he suffered an injury in fact that is concrete, particularized, and actual or imminent," (2) "**traceability**," *i.e.*, that the injury is traceable to—that is, "was likely caused by"—the defendant's legal violation, and (3) "**redressability**," *i.e.* "that the injury would likely be redressed by judicial relief." <u>TransUnion LLC v. Ramirez</u>, 141 S. Ct. 2190, 2203, 210 L. Ed. 2d 568 (2021) (*citing* <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

18.      MediCredit claims this Court lacks subject matter jurisdiction because "[t]he [FAC] fails to provide factual allegations that Plaintiff sustained actual damages, much less a concrete injury-in-fact caused by Medicredit." <u>MTD</u> at 2, ¶ 5. Put differently, MediCredit argues that Plaintiff lacks standing to bring his FDCPA claim against MediCredit because Plaintiff fails to satisfy the first element, *i.e.*, "injury in fact" prong, of the Article III standing analysis.

19.      Here, because Defendant levies a *facial attack* on subject matter jurisdiction, *see* <u>MTD</u> at 3 ("This motion presents a facial attack on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)"), this Court merely needs to look at the sufficiency of the allegations, of which are taken as true, to determine whether subject matter jurisdiction exists. <u>Houston v. Marod Supermarkets, Inc.</u>, 733 F.3d 1323, 1335-36 (11th Cir. 2013) ("Facial attacks to subject matter jurisdiction require the court merely to look and see if the plaintiff's complaint has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." (*citing* <u>Carmichael v. Kellogg, Brown & Root Serv.</u>, 572 F.3d 1271, 1279 (11th Cir. 2009))).

20.      Based on Eleventh Circuit precedent, and notwithstanding the fact that MediCredit's challenge is limited to a facial attack on the *first element* of the Article III standing analysis, *i.e.*, injury in fact, Plaintiff has satisfied *all three* elements of standing analysis at this stage and, as such, has standing to sue MediCredit in federal court for violation of the FDCPA.

3.1.1            <u>**INJURY IN FACT**</u>

21.      "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" <u>Spokeo, Inc. v. Robins</u>, 578 U.S. 330, 339, 136 S. Ct. 1540, 194 L.

Ed. 2d 635 (2016) (*quoting* <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). While a plaintiff cannot establish constitutional standing based solely on the defendant's "bare violation of a statute," he can do so by showing that the violation caused him some real harm – and in this context, "very nearly any level of direct injury is sufficient to show a concrete harm." <u>Muransky</u>, 979 F.3d at 920, 927; *see* <u>Salcedo v. Hanna</u>, 936 F.3d 1162, 1167 (11th Cir. 2019) ("A concrete injury need be only an 'identifiable trifle.'" (*quoting* <u>United States v. Students Challenging Regul. Agency Procs. (SCRAP)</u>, 412 U.S. 669, 689 n.14, 93 S. Ct. 2405, 37 L. Ed. 2d 254 (1973))).

22.     In the FAC, Plaintiff identifies several concrete, particularized harms he personally sustained as a direct result of MediCredit's unlawful demand for payment by and through the Collection Letter: **[1]** the Collection Letter caused Plaintiff to lose sleep and suffer hours of anxiety, believing MediCredit was retaliating against Plaintiff on behalf of Miami Healthcare, <u>FAC</u> at 8, ¶¶ 59, 60, 62, and 65; **[2]** the Collection Letter caused Plaintiff to lose at least one entire night of sleep because it falsely made Plaintiff believe the Medical Debt was Plaintiff's financial obligation, <u>FAC</u> at 8, ¶¶ 64-65; **[3]** Plaintiff expended time and money consulting with an attorney regarding the legitimacy of the Collection Letter and consequences of non-payment, <u>FAC</u> at 8, ¶ 66; **[4]** Receipt of the Collection Letter caused Plaintiff to suffer hours anxiety due to Plaintiff's inability to afford the Medical Debt, <u>FAC</u> at 8, ¶¶ 61-62; and **[5]** MediCredit disrupted and intruded upon Plaintiff's solitude and peace at home by sending the unlawful Collection Letter to Plaintiff's private residence that demanded payment of the Medical Debt, <u>FAC</u> at 8, ¶ 63.

23.     Under Eleventh Circuit precedent, "each of these harms [are] a concrete injury in fact." <u>Walters v. Fast AC, Ltd. Liab. Co.</u>, 60 F.4th 642, 648 (11th Cir. 2023) (concluding that time spent disputing a debt, costs incurred to fax a document to an attorney, and feelings of anxiety are each independent harms that "precedent recognizes ... as a concrete injury in fact."); <u>Drazen v. Pinto</u>, 74 F.4th 1336, 1345-46 (11th Cir. 2023) (holding "that the receipt of an unwanted text message causes a concrete injury" because an "unwanted text message shares a close relationship with the harm underlying the tort of intrusion upon seclusion"); <u>Toste v. Beach Club at Fontainebleau Park Condo. Ass'n., Aventura, P.A.</u>, 2022 U.S. App. LEXIS 25076, at *9 (11th Cir. Sep. 7, 2022) ("we have found standing where the plaintiff experienced both emotional distress manifesting in a loss of sleep and wasted time spent resolving problems caused by the defendant's mistakes"); <u>Losch v. Nationstar Mortg. LLC</u>, 995 F.3d 937, 943 (11th Cir. 2021) (wherein the

plaintiff claimed to have "spent at most an hour dealing with his dispute to Experian," the Eleventh Circuit found that the plaintiff suffered a concrete injury in the form of time wasted because "there is no question that wasted time is a concrete harm…."); Salcedo v. Hanna, 936 F.3d 1162, 1173 (11th Cir. 2019) (recognizing that Eleventh Circuit "precedents strongly suggest that concrete harm from wasted time" exists if the amount of time wasted is "more than a few seconds").

24.     In light of the allegations of the FAC, Plaintiff satisfies the "injury in fact" element through separate, independent tangible and intangible injuries – any one of which are recognized by Eleventh Circuit precedent has a concrete injury in fact.

25.     As discussed below to dispel all doubt, Plaintiff sufficiently alleged **tangible harms** of time wasted, emotional distress, and out-of-pocket expenses, Tsao v. Captiva MVP Rest. Partners, Ltd. Liab. Co., 986 F.3d 1332, 1338 (11th Cir. 2021) ("Tangible injuries can include both straightforward economic injuries [citing Debernardis v. IQ Formulations, Ltd. Liab. Co., 942 F.3d 1076, 1084 (11th Cir. 2019)] and more nebulous injuries, like lost time" [citing Salcedo v. Hanna, 936 F.3d 1162, 1173 (11th Cir. 2019)]); as well as an **intangible harm** of privacy invasion, Drazen v. Pinto, 74 F.4th 1336, 1345 (11th Cir. 2023) (finding the plaintiff suffered an injury in fact through the intangible harm of privacy invasion, and as such had standing in federal court, because "the harm associated with an unwanted text message shares a close relationship with the harm underlying the tort of intrusion upon seclusion"), whereby each of these tangible and intangible harms independently satisfy the "injury in fact" element of the Article III standing analysis.

**3.1.1.1     TANGIBLE HARMS**

26.     Contrary to MediCredit's erroneous assertions, two recent Eleventh Circuit decisions squarely affirm that Plaintiff suffered tangible harms of time wasted, emotional distress, and monetary costs that separately and independently satisfy the "injury in fact" element by of the Article III standing analysis: Walters v. Fast AC, Ltd. Liab. Co., 60 F.4th 642 (11th Cir. 2023) and Toste v. Beach Club at Fontainebleau Park Condo. Ass'n,, Aventura, P.A., 2022 U.S. App. LEXIS 25076 (11th Cir. Sep. 7, 2022).

WALTERS v FAST AC

27.     Gary Walters ("GW") had "agreed to purchase air conditioning repairs" from Fast AC LLC ("Fast AC") through a loan from FTL Capital Partners LLC ("FTL"), but according to GW, he had only agreed to the loan because a Fast AC employee lied about the price of FTL's loan and prevented Walters from viewing FTL's loan paperwork. 60 F.4th 642 at 645.

28.      "[GW] did not himself fill out FTL's credit application or even see any of the loan paperwork. Instead, [an agent of Fast AC] got on [GW's] computer and 'took care' of all the necessary financing paperwork for him by completing, e-signing, and submitting the loan application in [GW's] name, thereby concealing FTL's loan documents from him. Walters, 60 F.4th 642 at 646.

29.      "Before Fast AC began the ductwork repair, [GW] changed his mind and decided to cancel the job. Although he was able to cancel the repairs themselves, Fast AC's representative told him that, to cancel the financing agreement, [GW] would have to 'call the finance company' directly. Over the next several weeks, there was an unproductive back-and-forth between [GW], Fast AC, and FTL via telephone. FTL sent [GW] bills, past-due notices, and demand letters to pay for the ductwork repair that Fast AC never performed. [GW] never paid FTL, but FTL did not release him from the loan. Instead, FTL reported negative payment activity on [GW's] credit report to TransUnion.

30.      GW proceeded with suing "Fast AC and FTL in the Middle District of Florida. He asserted various state law consumer protection claims against Fast AC. Against FTL, he asserted state law claims and one federal [Truth in Lending Act ("TILA")] claim. [GW's] TILA claim against FTL [was] the sole basis for federal subject matter jurisdiction over his suit." Walters, 60 F.4th 642 at 647.

31.      "The district court concluded that [GW] lacked standing to bring his TILA claim and granted summary judgment for FTL." Walters, 60 F.4th 642 at 647. "In an order denying [GW's] motion for reconsideration, the district court rejected [GW's] argument that its summary judgment order had conflated the injury-in-fact element with traceability." Walters, 60 F.4th 642 at 647. GW appealed.

32.      On appeal, the Eleventh Circuit considered whether GW satisfied the "injury in fact" requirement of the Article III standing analysis through testimony, as GW testified that "(1) he was forced to spend time disputing his debt; (2) his credit took a hit, preventing him from making other purchases or refinancing his home; (3) he spent money faxing documents to his attorney; and (4) he felt anxious, exploited, embarrassed, and worthless." Walters, 60 F.4th 642 at 648. The Eleventh Circuit answered in in the affirmative, stating:

> Our precedent recognizes each of these harms as a concrete injury in fact. We have held that such injuries include not only "straightforward economic injuries," like lost money, but also "more

> nebulous" ones, <u>Tsao v. Captiva MVP Rest. Partners, LLC</u>, 986 F.3d
> 1332, 1338 (11th Cir. 2021), **like wasted time … and emotional
> distress**. *See, e.g.*, <u>Losch v. Nationstar Mortg. LLC</u>, 995 F.3d 937,
> 943 (11th Cir. 2021) ("[T]here is no question that wasted time is a
> concrete harm….").

<u>Walters</u>, 60 F.4th 642 at 648 (emphasis added). The Eleventh Circuit further rejected FTL's

argument that GW "needed to submit 'documentation' to corroborate his deposition testimony

detailing his injuries," <u>Id</u>., codifying that:

> [W]e have explicitly held that a plaintiff's "self-serving and/or
> uncorroborated" testimony can be enough on its own "to preclude
> summary judgment." <u>United States v. Stein</u>, 881 F.3d 853, 857-59
> (11th Cir. 2018) (*en banc*). Here, [GW] testified to matters within
> his personal knowledge. *See* Fed. R. Evid. 602. [GW's] deposition
> testimony **describing his lost time, economic harm, and
> emotional distress is sufficient evidence of those injuries** to
> survive summary judgment. *See* <u>Losch</u>, 995 F.3d at 943 (plaintiff
> adequately established "concrete injury in the form of emotional
> distress and time . . . spent" through his own deposition testimony
> and affidavit).

<u>Walters</u>, 60 F.4th 642 at 648. *See also* <u>Id</u>. at 649 (finding that GW's "injuries go beyond FTL's

noncompliant disclosures – he provided evidence of lost time, money, and peace. **These are

garden-variety injuries in fact under Article III.**" (emphasis added)).

TOSTE V. BEACH CLUB

33.      Segundo Toste ("ST"), after falling behind on his monthly payments to his

condominium, received a collection letter from a law firm, Russell S. Jacobs PA, that demanded

more than $10,000 in past-due association fees, interest, late fees, attorney's fees, and costs. <u>Toste</u>,

2022 U.S. App. LEXIS 25076 at *1.

34.      Believing that the amount demanded by the law firm was excessive, [ST] consulted

with an attorney to help him determine how much he really owed and what the legal consequences

would be if he paid less than the collection letters demanded or if he overpaid. <u>Toste</u>, 2022 U.S.

App. LEXIS 25076 at *2.

35.      With the help of an accountant, [ST] and his attorney determined that the collection

letters misstated the amount of his debt. [ST] proceeded to hire the same attorney to sue the

association and its lawyers. <u>Toste</u>, 2022 U.S. App. LEXIS 25076 at *3. ST claimed, *inter alia*, that

the collection letter he received violated the FDCPA by misstating the amount of the debt and

attempting to collect impermissible charge." <u>Toste</u>, 2022 U.S. App. LEXIS 25076 at *4.

36.     Following a motion to dismiss, "[t]he district court determined that [ST] lacked standing to bring the lawsuit because the defendants' actions had not caused him any concrete injury. <u>Toste</u>, 2022 U.S. App. LEXIS 25076 at *2. ST appealed.

37.     The question before the Eleventh Circuit was whether the district court committed a reversable error in ruling that [ST] "had not demonstrated an injury in fact partly because [the district court] considered his emotional damages and the time he spent trying to discover the true amount of his debt to be too insubstantial." <u>Toste</u>, 2022 U.S. App. LEXIS 25076 at *9. The Eleventh Circuit found the district court to be in error, vacated the dismissal and the remanded case, stating:

> We have explained that a plaintiff's wasted time, in particular, can be a concrete injury for standing purposes. <u>Salcedo</u>, 936 F.3d at 1173; *see* <u>Pedro v. Equifax, Inc.</u>, 868 F.3d 1275, 1280 (11th Cir. 2017). For example, we have found that a plaintiff stated a tangible injury for standing purposes where she alleged that she "lost time" trying to correct inaccuracies in her credit report. <u>Pedro</u>, 868 F.3d at 1280. And while we have not yet decided in a published opinion whether emotional distress alone is a sufficiently concrete injury for standing purposes, **we have found standing where the plaintiff experienced both emotional distress manifesting in a loss of sleep and wasted time spent resolving problems caused by the defendant's mistakes**. *See* <u>Losch v. Nationstar Mortg. LLC</u>, 995 F.3d 937, 943 (11th Cir. 2021). Those are some of the same injuries Toste testified to here.

<u>Toste</u> 2022 U.S. App. LEXIS 25076 at *9. In so finding, the Eleventh Circuit further stated that:

> We recognize that, as the defendants have argued, the time and money that Toste spent on the FDCPA lawsuit itself cannot give rise to a concrete injury for Article III standing purposes. *See* <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 107, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) ("a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit"). **But here, [ST] initially consulted with an attorney at least in part to help him accurately calculate his debt to the association, to advise him of the legal consequences of paying (or not paying) the sums demanded** …. **Time or money spent in defending against a legal action taken by a debt collector against the debtor is separable from the costs of bringing the debtor's own lawsuit**. "Because there is no question that wasted time is a concrete harm, [ST] has standing to pursue his claims so long as even a small part of the injury is attributable to" the defendants.

<u>Toste</u>, 2022 U.S. App. LEXIS 25076, at *10-11 (emphasis added).

38.    Ultimately, the Eleventh Circuit found that ST had "Article III standing to sue the defendants based on his claims that the alleged misconduct violated the FDCPA" because "time spent trying to determine the correct amount of his debt, resolve the lien, and avoid the threatened foreclosure," as well as the "emotional distress manifesting in a loss of sleep," were sufficiently tangible injuries to confer Article III standing. Toste, 2022 U.S. App. LEXIS 25076 at *12.

**THE "INJURY IN FACT" PRONG OF THE ARTICLE III STANDING ANALYSIS IS SATISFIED BECAUSE PLAINTIFF SUFFERED TANGIBLE HARMS**

39.    Walters and Toste exemplify Plaintiff sustained multiple tangible harms, each of which afford Plaintiff with an "injury in fact" at this stage in light of MediCredit's facial standing attack. *See* MTD at 3 ("[t]his motion presents a facial attack on subject matter jurisdiction"); *see also* Houston at 733 F.3d 1323 at 1335-36 ("Facial attacks to subject matter jurisdiction require the court merely to look and see if the plaintiff's complaint has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." (citations omitted)).

40.    MediCredit argues Plaintiff "fails to provide factual allegations that Plaintiff sustained actual damages, much less a concrete injury-in-fact caused by Medicredit," MTD at 2, ¶ 5, but MediCredit plainly overlooks the harms alleged in the operative complaint that were the direct result of the Collection Letter, *see* FAC at 8, ¶¶ 59, 61-62, 64 (alleging Collection Letter caused Plaintiff to suffer loss of at least one night of sleep and hours of anxiety due to the false belief that the Medical Debt was Plaintiff's financial obligation coupled with Plaintiff's inability to afford the Medical Debt) and FAC at 8, ¶¶ 59, 60, 62, and 65 (alleging the Collection Letter caused Plaintiff to lose at least one entire night of sleep and suffer hours of anxiety believing MediCredit was retaliating against Plaintiff on behalf of the creditor). "These are garden-variety injuries in fact under Article III." Walters, 60 F.4th 642 at 649.

41.    MediCredit further ignores Eleventh Circuit precedent which codifies that these harms satisfy the "injury in fact" element of the Article III standing analysis. *See, e.g.*, Losch v. Nationstar Mortg. LLC, 995 F.3d 937, 943 (11th Cir. 2021) (wherein the plaintiff claimed to have "spent at most an hour dealing with his dispute to Experian," the Eleventh Circuit found the plaintiff suffered a concrete injury in the form of time wasted because "there is no question that wasted time is a concrete harm…."); Salcedo v. Hanna, 936 F.3d 1162, 1173 (11th Cir. 2019)

(recognizing that Eleventh Circuit "precedents strongly suggest that concrete harm from wasted" exists if the amount of time wasted is "more than a few seconds").

42.     Further, MediCredit ignores the time wasted alleged by Plaintiff through loss of sleep and anxiety, with the exception being MediCredit's misplaced and critically narrow mention that "[t]he time, effort and money spent in communication with his attorney cannot be attributed to the statement or Medicredit." MTD at 5. Contrary to MediCredit's reading of the FAC, the time and money spent by Plaintiff consulting with an attorney about the Collection Letter specifically are directly attributable to MediCredit because MediCredit sent the Collection Letter. *See* FAC at 7, ¶ 53. Thus, it cannot be denied that the time and money spent by Plaintiff consulting with an attorney regarding the legitimacy of the Collection Letter and consequences of non-payment, FAC at 8, ¶ 66, satisfy the "injury in fact" prong of the Article III standing analysis. *See* Walters v. Fast AC, Ltd. Liab. Co., 60 F.4th 642, 648 (11th Cir. 2023) (wherein the plaintiff claimed he wasted time disputing his debt, as well as incurred costs faxing documents to his attorney, the Eleventh Circuit stated that "[o]ur precedent recognizes each of these harms as a concrete injury in fact" in holding that the plaintiff suffered a concrete injury in fact).

43.     Moreover, the time wasted by Plaintiff through hours of emotional distress and lost sleep as a direct result of the Collection Letter, *see* FAC at 8, ¶¶ 58-65, also satisfy the "injury in fact" element of the Article III standing analysis. *See* Toste v. Beach Club at Fontainebleau Park Condo. Ass'n,, Aventura, P.A., 2022 U.S. App. LEXIS 25076, at *9 (11th Cir. Sep. 7, 2022) ("we have found standing where the plaintiff experienced both emotional distress manifesting in a loss of sleep and wasted time spent resolving problems caused by the defendant's mistakes").

44.     Thus, in the context of tangible harms suffered by Plaintiff as a direct result of the collection letter sent by MediCredit, Plaintiff satisfies the "injury in fact" component of the Article III standing analysis in three ways: **(1)** though allegations of at least one night of lost sleep and hours anxiety due perceived retaliation by MediCredit; **(2)** though allegations of at least one night of lost sleep and hours anxiety due to the false belief that the Medical Debt was Plaintiff's financial obligation coupled with Plaintiff's inability to afford the Medical Debt; and **(3)** through allegations of the time and money spent by Plaintiff consulting with an attorney regarding the money demanded by the Collection Letter that Plaintiff could not afford.

**3.1.1.2**       **INTANGIBLE HARMS**

45.       With respect to intangible harms, the Eleventh Circuit's decision in <u>Drazen v. Pinto</u>, 74 F.4th 1336 (11th Cir. 2023) crystallizes the privacy invasion sustained by Plaintiff due to MediCredit's unlawful collection attempt as an intangible harm that satisfies the "injury in fact" requirement of the Article III standing analysis.

<u>DRAZEN V. PINTO</u>

46.       Susan Drazen ("SD") sued GoDaddy for violation of the Telephone Consumer Protection Act ("TCPA") on a class action basis based on her receipt of a single unwanted, automated telemarketing text message. <u>Drazen</u>, 74 F.4th 1336 at 1339. Following a motion for preliminary approval of that agreement, "the district court issued a *sua sponte* order 'to examine its own jurisdiction.' In that order, the court cited our decision in <u>Salcedo v. Hanna</u>, 936 F.3d 1162 (11th Cir. 2019), which held that the 'receipt of a single text message' is not a concrete injury. <u>Drazen</u>, 74 F.4th 1336 at 1340. SD appealed, *albeit* on separate grounds, but the panel dismissed the case for lack of jurisdiction. <u>Id</u>. SD "then moved for rehearing *en banc*, urging us 'to reevaluate the <u>Salcedo</u> holding and to clarify the law regarding the elements necessary to pursue a TCPA claim," and the motion was granted. <u>Drazen</u>, 74 F.4th 1336 at 1342.

47.       The question presented to the Eleventh Circuit sitting *en banc* was "whether the plaintiffs who received a single unwanted, illegal telemarketing text message suffered a concrete injury." <u>Drazen</u>, 74 F.4th 1336 at 1339. To answer the question, the Eleventh Circuit considered "whether the harm from receiving such a text message shares a close relationship with a traditional harm." <u>Id</u>. SD argued that the harm from one text message shares  a close relationship with the "common-law claim of intrusion upon seclusion." The Eleventh Circuit sitting *en banc* agreed. *See* <u>Id</u>. ("**The plaintiffs contend that it does—namely, with the harm that underlies a lawsuit for the common-law claim of intrusion upon seclusion. We agree**.").

48.       The Eleventh Circuit **rejected** GoDaddy's argument that "the harm from receiving one unwanted text message lacks a close relationship to the harm underlying intrusion upon seclusion because an element of that common-law tort requires that the privacy invasion 'be highly offensive to a reasonable person.'" <u>Drazen</u>, 74 F.4th 1336 at 1343 (citing Restatement (Second) of Torts § 652B (Am. L. Inst. 1965)). In rejecting GoDaddy's argument, the Eleventh Circuit made clear – **the focus is on the *kind* of harm and not the *degree* of harm**. <u>Drazen</u>, 74 F.4th 1336 at 1344 ("seven of our sister Circuits have declined to consider the degree of offensiveness required

to state a claim for intrusion upon seclusion at common law. Instead, they have held that receiving either one or two unwanted texts or phone calls resembles the kind of harm associated with intrusion upon seclusion…. **We think that asking whether the harms are similar in kind but not degree makes sense**") (emphasis added)..

49.    In reaching the conclusion that a single text message caused SD to suffer a concrete injury, the Eleventh Circuit rested upon the fact that, although GoDaddy zealously argued that one text message is not highly offensive to the ordinary reasonable man, GoDaddy "conceded at oral argument that receiving one unwanted text message each day for thirty days would be enough to satisfy the offensiveness element." Drazen, 74 F.4th 1336 at 1345. In the words of the Eleventh Circuit sitting *en banc*:

> [T]hat concession is the whole ballgame. After all, **the argument that thirty unwanted text messages in thirty days are enough, but one is not, is an argument of degree, not kind. If thirty are enough, then are twenty-nine? Are twenty-eight? How about two? Drawing the line necessarily requires us to make a choice of degree**.
>
> But the Constitution empowers Congress to decide what degree of harm is enough so long as that harm is similar in kind to a traditional harm. And that's exactly what Congress did in the TCPA when it provided a cause of action to redress the harm that unwanted telemarketing texts and phone calls cause. *See* 47 U.S.C. § 227(b)(1)(A)(iii). As our colleagues in the Third Circuit have recognized, "Congress was not inventing a new theory of injury when it enacted the TCPA." Susinno, 862 F.3d at 352. Rather, "Congress identified a modern relative of a harm with long common law roots." Gadelhak, 950 F.3d at 462.

Drazen, 74 F.4th 1336 at 1345 (emphasis added). Thus, as surmised by the Eleventh Circuit:

> In sum, then, we hold that the harm associated with an unwanted text message shares a close relationship with the harm underlying the tort of intrusion upon seclusion. Both harms represent "an intrusion into peace and quiet in a realm that is private and personal." Id. at 462 n.1. For that reason, the harms are similar in kind, and the receipt of an unwanted text message causes a concrete injury. While an unwanted text message is insufficiently offensive to satisfy the common law's elements, Congress has used its lawmaking powers to recognize a lower quantum of injury necessary to bring a claim under the TCPA. As a result, the plaintiffs' harm "is smaller in degree rather than entirely absent."

Drazen, 74 F.4th 1336, 1345-46 (*quoting* Hunstein, 48 F.4th at 1249).

**THE "INJURY IN FACT" PRONG OF THE ARTICLE III STANDING ANALYSIS IS
SATISFIED BECAUSE PLAINTIFF SUFFERED AN INTANGIBLE HARM**

50.     Drazen echoes the Supreme Court in finding that **intrusion upon seclusion**, "a harm 'traditionally recognized as providing a basis for lawsuits in American courts,'" is an intangible harm that satisfies the "injury in fact" prong of the Article III standing analysis. Drazen, 74 F.4th 1336 at 1342-43 (*quoting* TransUnion, 141 S. Ct. 2190 at 2204). In so doing, the Eleventh Circuit made clear, in analyzing the common law elements of the traditionally recognized "intrusion upon seclusion,"[1] the focus is on the **kind of intrusion** *rather than* **the degree of intrusion** for purposes of standing. Drazen, 74 F.4th 1336 at 1345 (in finding that a single unwanted text message was an intrusion upon seclusion sufficient to afford standing, the court recognized that, although "a single unwanted text message may not 'be highly offensive to the ordinary reasonable man' .... an unwanted text message is nonetheless offensive to some degree to a reasonable person." (citation omitted).

51.     Critically, just as GoDaddy in Drazen conceded to arguing *degree* instead of *kind*,[2] **so does MediCredit**. MTD at 7 (wherein MediCredit claimed the Collection Letter was not an "intrusion upon seclusion" because it was not "repeated with such persistence and frequency as to amount to becomes a substantial burden to his existence"). In the words of the Eleventh Circuit, MediCredit's "**concession is the whole ballgame**." After all, the argument that letters "repeated with such persistence and frequency" would be enough, "**but one is not, is an argument of degree, not kind**." Drazen, 74 F.4th 1336, 1345 (11th Cir. 2023) ("If thirty are enough, then are twenty-nine? Are twenty-eight? How about two? Drawing the line necessarily requires us to make a choice of degree.") (emphasis added).

52.     Thus, given MediCredit's concession as to the sufficiency of the privacy invasion, coupled with the fact that the Collection Letter was sent by MediCredit directly to Plaintiff's private residence in an attempt to collect a debt which MediCredit *knew* was not Plaintiff's financial responsibility, FAC at 7-8, ¶¶ 51-66, Plaintiff's receipt of the unlawful collection letter

---

[1] Drazen, 74 F.4th 1336 at 1345 ("[i]ntrusion upon seclusion consists of an (i) intentional intrusion (ii) into another's solitude or seclusion, (iii) which would be highly offensive to a reasonable person")

[2] Drazen, 74 F.4th 1336 at 1345 ("GoDaddy conceded at oral argument that receiving one unwanted text message each day for thirty days would be enough to satisfy the offensiveness element"),

causes a concrete injury by wrongfully intruding upon Plaintiff's seclusion because an unwanted, and otherwise illegal, collection letter is nonetheless offensive to some degree to a reasonable person. *See* <u>Drazen</u>, 74 F.4th 1336 at 1345.

53.     As such, the Collection Letter's intrusion upon Plaintiff's seclusion satisfies the "injury in fact" prong of the Article III standing analysis. <u>Drazen</u>, 74 F.4th 1336 at 1345 ("the Constitution empowers Congress to decide what degree of harm is enough so long as that harm is similar in kind to a traditional harm. And that's exactly what Congress did in the TCPA when it provided a cause of action to redress the harm that unwanted telemarketing texts and phone calls cause"); *See also* 15 U.S.C. 1692(a) (under the Congressional Findings and Declaration of Purpose section of the FDCPA, it is codified that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," whereby "[a]**busive debt collection practices contribute to the number ... invasions of individual privacy**." (emphasis added)).

### 3.1.2     <u>REDRESSABILITY AND TRACEABILITY</u>

54.     Having satisfied the "injury in fact" or "concreteness" prong of the Article III standing analysis, the attention now shifts to the remaining two prongs of "redressability" and "traceability," both of which are also satisfied.

55.     Redressability requires the plaintiff to show that his injuries are "likely to be redressed by a favorable judicial decision." <u>Spokeo</u>, 578 U.S. at 338 (*citing* <u>Lujan</u>, 504 U.S. at 560-61). As set forth above, Plaintiff suffered an injury in fact in the form of wasted time, economic harm, emotional distress, and invasion of privacy. "That, it goes without saying, is an injury which the award of damages . . . will redress." <u>Del Valle v. Trivago GMBH</u>, 56 F.4th 1265, 1279 (11th Cir. 2022); *see* <u>Resnick v. AvMed, Inc.</u>, 693 F.3d 1317, 1324 (11th Cir. 2012) ("Plaintiffs allege a monetary injury and an award of compensatory damages would redress that injury."). As such, because the actual and statutory damages sought by Plaintiff, <u>FAC</u> at 10, ¶ 77, will relieve and otherwise compensate Plaintiff for the concrete harms he sustained, *see* <u>Massachusetts v. EPA</u>, 549 U.S. 497, 525 (2007) ("a plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself, [but] [h]e need not show that a favorable decision will relieve his every injury"). Thus, Plaintiff has satisfied the "redressability" prong of the Article III standing analysis.

56.     Finally, we conclude the Article III standing analysis with "traceability," of which requires "a causal connection" between the plaintiff's injuries and the defendant's legal violation. Lujan, 504 U.S. at 560. Pointedly, traceability is "less stringent" than the tort-law concept of "proximate cause," Cordoba v. DIRECTV, LLC, 942 F.3d 1259, 1271 (11th Cir. 2019), meaning the defendant's challenged conduct need not be "the very last step in the chain of causation" for it to be fairly traceable to the plaintiff's injury, Wilding v. DNC Servs. Corp., 941 F.3d 1116, 1126 (11th Cir. 2019) (quotation omitted). "[E]ven harms that flow indirectly from the action in question can be … 'fairly traceable' to that action for standing purposes." Focus on the Fam. v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1273 (11th Cir. 2003). Here, but for MediCredit sending the unlawful collection letter to Plaintiff, Plaintiff would not have sustained the aforementioned concrete injuries of time wasted, out-of-pocket expenses, emotional distress, and invasion of privacy. As such, because the unlawful collection letter sent by MediCredit is both the but-for and proximate cause of the concrete injuries sustained by Plaintiff, the "traceability" prong of the Article III standing analysis is satisfied.

57.     Thus, through multiple different tangible injuries, *i.e.*, emotional distress, time wasted, and expenses, as well as an intangible injury, *i.e.*, the intrusion upon Plaintiff's seclusion, sustained by Plaintiff as a result of the collection letter sent by MediCredit in an attempt to collect a debt Plaintiff was not legally responsible under Florida' Workers' Compensation Law, Plaintiff satisfied each of the three prongs of the Article III standing analysis and, as such, has standing to hold MediCredit accountable for violating the FDCPA as detailed below.

**3.2     PLAINTIFF SUFFICIENTLY PLEAD VIOLATION OF FDCPA**

58.     Having determined that Plaintiff has standing to sue MediCredit in federal court for violating for the FDCPA, the focus now shifts to MediCredit's Second Argument, *i.e.*, that Plaintiff failed to proffer "sufficient factual allegations to support a conclusion that Medicredit violated the FDCPA as a matter of law." MTD at 2, ¶ 6. As shown below, Plaintiff stated a claim by definitively pleading a *prima facie* case for violation of 15 U.S.C. § 1692e(2)(A) which prohibits "[t]he false representation of the character, amount, or legal status of any debt" based on MediCredit's attempt to collect a debt, by and through the Collection Letter, for which Plaintiff was not legally responsible under Florida's Workers' Compensation Law.

59.     "To state a claim under the FDCPA, the complaint must allege that '(1) the plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt

collector as defined by the statute; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" Helman v. Bank of Am., 685 F. App'x 723, 725-26 (11th Cir. 2017) (*quoting* Eke v. FirstBank Fla., 779 F. Supp. 2d 1354, 1357 (S.D. Fla. 2011)).

### 3.2.1 MEDICREDIT IS A "DEBT COLLECTOR" AND PLAINTIFF WAS "THE OBJECT OF COLLECTION ACTIVITY ARISING FROM A CONSUMER DEBT"

60.    With respect to the first two elements of Plaintiff's *prima facie* case against MediCredit for violation of the FDCPA, MediCredit *does not contest* that Plaintiff was the object of collection activity arising from a consumer debt. Further, MediCredit *does not contest* that it (Defendant) is a debt collector as defined by the FDCPA. Looking to the operative pleadings, Plaintiff sufficiently plead that MediCredit is a "debt collector" within the meaning of the FDCPA, *see* FAC at 6-7, ¶¶ 41-51, as well as sufficiently plead that Plaintiff was "the object of collection activity arising from [a] consumer debt." *See* FAC at 7-8, ¶¶ 53-57. Thus, the only issue before this Court is whether Plaintiff has adequately alleged MediCredit has engaged in an act prohibited by the FDCPA.

### 3.2.2 PLAINTIFF ADEQUATELY PLEAD THAT MEDICIREDIT HAS ENGAGED IN AN ACT PROHIBITED BY THE FDCPA

61.    With respect to the third element of Plaintiffs' *prima facie* case against MediCredit, *i.e.,* whether MediCredit engaged in an act or omission prohibited by the FDCPA, the "least sophisticated consumer" standard dictates whether a debt collector's communication, or other conduct, violates the FDCPA. *See* Crawford v. LVNV Funding, LLC, 758 F.3d 1254, 1258 (11th Cir. 2014) (reiterating that the "least sophisticated consumer" standard governs "whether a debt collector's conduct is deceptive, misleading, unconscionable, or unfair under the statute." (internal quotations omitted)); LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1200 (11th Cir. 2010) (holding that the "least-sophisticated consumer" standard applies to evaluate claims under both § 1692e and § 1692f). Thus, in the context of the FDCPA, "[t]he inquiry is not whether the particular plaintiff-consumer was deceived or misled; instead, the question is whether the least sophisticated consumer would have been deceived by the debt collector's conduct." Crawford, 758 F.3d 1254 at 1259 (citation and internal quotations omitted).

62.    "The purpose of the least-sophisticated consumer standard is to ensure the protection of the gullible as well as the shrewd." LeBlanc, 601 F.3d 1185 at 1194; *see* Crawford, 758 F.3d 1254 at 1258-59 ("[t]he 'least-sophisticated consumer' standard takes into account that

consumer-protection laws are 'not made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking, and the credulous.'" (*quoting* Jeter v. Credit Bureau, 760 F.2d 1168, 1172-73 (11th Cir. 1985))). The fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." Jeter, 760 F.2d at 1168.

63.     "Literally, the least sophisticated consumer is not merely 'below average,' he is the very last rung on the sophistication ladder. Stated another way, he is the single most unsophisticated consumer who exists. Even assuming that he would be willing to do so, such a consumer would likely not be able to read a collection notice with care, let alone interpret it in a reasonable fashion." Gammon v. GC Servs., 27 F.3d 1254, 1257 (7th Cir. 1994); Russell v. Equifax A.R.S., 74 F.3d 30, 34 (2d Cir.1996) ("'the test is how the least sophisticated consumer – one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, every day, common consumer – understands the notice he or she receives.'").

64.     With respect to the present matter, just as with the argument challenging standing, MediCredit overlooks unambiguous allegations, as well as critically misunderstands the least sophisticated consumer standard, to arrive at the misguided argument of "there are no *factual allegations* that Plaintiff was misled by the [Collection Letter]" MTD at 9. First, as a preliminary matter, Plaintiff claims MediCredit violated § 1692e and § 1692e(2)(A) of the FDCPA for expressly false statements – not merely statements which could be misleading. *See* FAC at 10, ¶ 76. Second, even though the Collection Letter *falsely* represented that Plaintiff was responsible for the Medical Debt and Plaintiff suffered harm due to said false representations, *see* FAC at 7-8, ¶¶ 53-66, Plaintiff *does not* need to have been misled by the Collection Letter to state a claim for violation of § 1692e or § 1692(e)(2)(A) of the FDCPA. Crawford, 758 F.3d 1254 at 1259.

65.     Although in the context of summary judgment, this Court's decision in Kottler v. Gulf Coast Collection Bureau, 460 F. Supp. 3d 1282 (S.D. Fla. 2020) is abundantly instructive in finding that Plaintiff sufficiently plead MediCredit engaged in conduct prohibited by § 1692e(2)(A) of the FDCPA:

> Here, the parties disagree with respect to the nature of the Letter. Plaintiff contends that the Letter was a collection letter, while Defendant contends that it was simply a validation notice. To determine whether a representation violates the FDCPA, the Court must view a defendant's actions through the eyes of the "least sophisticated consumer." Jeter v. Credit Bureau. Inc., 760 F.2d 1168,

1175 (11th Cir. 1985). The 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and willingness to read a collection notice with some care. However, the test has an objective component in that while protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness. LeBlanc, 601 F.3d at 1194 (internal quotations and citations omitted). Even so, "**[t]his standard does not depend on the plaintiff's individual perception or the perception of a reasonable consumer; rather, it depends on whether the least sophisticated consumer would know that the particular statement was false**." Malone v. Accounts Receivable Res., Inc., 408 F. Supp. 3d 1135, 1343 (S.D. Fla. 2019) (*citing* Landeros v. Pinnacle Recovery, Inc., 692 F. App'x 608, 613 (11th Cir. 2017)).

Kottler, 460 F. Supp. 3d 1282 at 1292 (emphasis added).

66.     Here, Plaintiff claims "[t]he Collection Letter *falsely* represents that Plaintiff is responsible for the repayment of the Medical Debt, [despite the fact that] Plaintiff is not liable or otherwise responsible for the payment of the medical services rendered by Miami Healthcare, as such medical services were rendered to Plaintiff as a result of a work-related injury sustained by Plaintiff." FAC at 9, ¶ 73. Plaintiff also claims "[MediCredit], by and through the Collection Letter, *falsely* represents the character of the Medical Debt, *in that*, the Collection Letter falsely represents Medical Debt as a debt which Plaintiff is solely responsible and/or otherwise obligated to pay." FAC at 10, ¶ 74. Plaintiff further claims "[MediCredit] *falsely* represents the amount of the Medical Debt, *in that*, the amount sought by the Collection Letter exceeds the amount which Miami Healthcare is entitled pursuant to the fee schedules and/or guidelines for services rendered to injured workers such as Plaintiff." FAC at 10, ¶ 75. Finally, Plaintiff makes clear, "by and through the Collection Letter, [MediCredit] violated § 1692e and § 1692e(2)(A) of the FDCPA by falsely representing the Medical Debt as Plaintiff's personal responsibility, falsely representing the character of the Medical Debt, as well as by falsely representing the amount of the Medical Debt." FAC at 10, ¶ 76.

67.     MediCredit, however, overlooks the above allegations and, instead, stands upon the misplaced argument that Plaintiff fails to state a claim because "[t]he Complaint does not allege that the Plaintiff was influenced with respect to the debt and therefore not mislead." MTD at 10. Contrary to MediCredit's attempt to argue otherwise, the "standard does not depend on the plaintiff's individual perception or the perception of a reasonable consumer; rather, it depends on

whether the least sophisticated consumer would know that the particular statement was false."
Kottler, 460 F. Supp. 3d 1282 at 1292; *see also* Crawford, 758 F.3d 1254 at 1259.

68.     Just as this Court found, as a matter of law, that Gulf Coast Collection Bureau
violated the FDCPA by sending a collection letter to a consumer in an attempt to collect a debt
arising from the treatment of a workplace injury, Plaintiff must be found to have stated a claim for
MediCredit having done the exact same:

> In this case, however, there is no genuine issue of material fact as to
> whether the Letter contained a false representation of the character or
> legal status of the debt because Plaintiff was not liable under Florida's
> Workers' Compensation Law for payment of the RPS debt. Importantly,
> **Defendant does not dispute the contents of the Letter** and the Court
> has already rejected Defendant's interpretation of the Workers'
> Compensation Law. As such, regardless of how the Letter may be
> characterized—as a demand or validation—it is a communication in
> connection with the collection of a debt; it is an attempt to collect a debt.
> The Letter was sent to Kottler, and states, in pertinent part, "[t]o make
> a payment online [. . . and] [y]ou may mail payments . . . ." ECF No.
> [19-1]. In addition, the Letter provides instructions for disputing the
> validity of the debt and warns Kottler that, should she not dispute its
> validity, Defendant will assume the debt to be valid. Because Plaintiff
> was not liable for payment under the Florida's Workers' Compensation
> Law, unless and until a determination was made otherwise, the
> statements in the Letter sent to Plaintiff concerning the ability to make a
> payment online or by mail, and Defendant's expressed assumption that
> the debt was valid unless she disputed its validity, constitute false
> representations of the character or legal status of the RPS debt. This is
> true regardless of whether the Letter itself is characterized as a demand
> or a validation. The least sophisticated consumer would not understand
> the nuances of Florida's Workers' Compensation Law and would not
> know whether she was obligated to pay the debt, especially during the
> pendency of her Workers' compensation claim. Therefore, the least
> sophisticated consumer would not know that the Letter contained false
> statements. **As a result, the Letter violated the FDCPA as a matter
> of law**. *See* Malone, 408 F. Supp. 3d at 1343-44 (determining that letter
> violated FDCPA as a matter of law, where there was no dispute that
> referred debt was covered under Workers' compensation); *see
> also* Alderman v. GC Servs. Ltd. P'ship, No. 2:16-cv-14508-
> ROSENBERG/MATTHEWMAN, 2018 U.S. Dist. LEXIS 141596,
> 2018 WL 3997929, at *4 (S.D. Fla. Aug. 21, 2018) (determining as a
> matter of law that least sophisticated consumer would interpret letter as
> requiring that validity of a debt be disputed in writing, despite use of the
> word "please").

Kottler, 460 F. Supp. 3d 1282 at 1293-94.

69.     Further, MediCredit's attempt at defeating Plaintiff's claim by conflating its mistaken belief that Plaintiff himself must be misled with a requirement that only "materially" false or misleading statements violate the FDCPA **equally falls flat upon basic scrutiny**. *See* MTD at 9 (wherein MediCredit cites to Rivas v. Midland Funding LLC, 398 F. Supp. 3d 1294, 1304 (S.D. Fla. 2019) as standing for proposition that "[t]he Eleventh Circuit has joined the majority of the Federal Circuits to conclude that a 'statement must influence a consumer's decision or ability to pay or challenge a debt' to be considered material."). MediCredit's reliance on Rivas is misguided. More accurately, Rivas clarifies that "only misstatements that are important in the sense **that they could objectively affect the least sophisticated consumer's decision** making are actionable." Rivas, 398 F. Supp. 3d 1294, 1304 (S.D. Fla. 2019) (emphasis added).

70.     Here, just as this Court correctly recognized in Kottler, the Collection Letter contains sufficiently material misrepresentations and otherwise *false* statements that could objectively affect the least sophisticated consumer's decision because the Collection Letter states, among other things, MediCredit "will assume" that the Medical Debt is valid, falsely represents that it was attempting to "collect a debt you owe to [Miami Healthcare]," claims the "[t]otal amount of the debt now" was $1,337.33, and directs the least sophisticated consumer to "[m]ake your check payable to MEDICREDIT INC." *See* Doc. 11-3 (the Collection Letter); *see also* Kottler, 460 F. Supp. 3d 1282 at 1293 ("Because Plaintiff was not liable for payment under the Florida's Workers' Compensation Law, unless and until a determination was made otherwise, the statements in the Letter sent to Plaintiff concerning the ability to make  a payment online or by mail, and Defendant's expressed assumption that the debt was valid unless she disputed its validity, constitute false representations of the character or legal status of the RPS debt.").

71.     Thus, just as this Court found, as a matter of law, that Gulf Coast Collection Bureau violated the FDCPA by sending a collection letter to a consumer in an attempt to collect a debt arising from the treatment of a workplace injury in Kottler, Plaintiff has sufficiently plead a *prima facie* case against MediCredit for violation of § 1692e and § 1692e(2)(A) of the FDCPA. MediCredit unlawfully demanded payment from Plaintiff for a debt arising from the treatment of a workplace injury. MediCredit does not dispute that it is a debt collector, MediCredit does not dispute that Plaintiff was the object of collection activity, MediCredit does not dispute the content of the Collection Letter, and MediCredit does not dispute it was attempting to collect a debt arising from the treatment of a workplace injury. Instead, MediCredit incorrectly argues Plaintiff failed to

state a claim because Plaintiff was not individually misled by the Collection Letter. As explained above, and notwithstanding the fact that Plaintiff was wrongfully misled the Collection Letter, *see* FAC at 8, ¶¶ 64-65, Plaintiff *does not* need to have been misled by the Collection Letter to state a claim for violation of the FDCPA in light of the governing least sophisticated consumer standard. Simply put, the Collection Letter's unlawful attempt to collect the Medical Debt from Plaintiff, *see* FAC at 7, ¶ 55, renders the Collection Letter, as a whole, sufficiently false and materially misleading because "[t]he least sophisticated consumer would not understand the nuances of Florida's Workers' Compensation Law and would not know whether she was obligated to pay the debt…." Kottler, 460 F. Supp. 3d 1282, 1293 (S.D. Fla. 2020). As such, Plaintiff has adequately plead a *prima facie* case against MediCredit for violation of § 1692e and § 1692e(2)(A) FDCPA due to MediCredit's attempt to collect the Medical Debt from Plaintiff by and through the Collection Letter. *See, e.g.*, FAC at 9-10, ¶¶ 73-76.

**4.        CONCLUSION**

72.      For the reasons set forth above, MediCredit's Motion to Dismiss must be denied in its entirety. Each of the different tangible and intangible harms identified by Plaintiff are sufficiently concrete, particularized harms Plaintiff sustained as a result of MediCredit's unlawful demand for payment by and through the Collection Letter.

73.      Plaintiff has standing to sue MediCredit for violation of the FDCPA because Plaintiff suffered tangible injuries as evidenced by allegations of wasted time, emotional distress, and incurred costs. Walters, 60 F.4th 642, 648 (11th Cir. 2023) (wherein the plaintiff claimed he wasted time disputing his debt, as well as incurred costs faxing documents to his attorney, the Eleventh Circuit stated that "[o]ur precedent recognizes each of these harms as a concrete injury in fact" in holding that the plaintiff suffered a concrete injury in fact); Toste, 2022 U.S. App. LEXIS 25076, at *9 (11th Cir. Sep. 7, 2022) ("we have found standing where the plaintiff experienced both emotional distress manifesting in a loss of sleep and wasted time spent resolving problems caused by the defendant's mistakes"); Salcedo v. Hanna, 936 F.3d 1162, 1173 (11th Cir. 2019) (recognizing that Eleventh Circuit "precedents strongly suggest that concrete harm from wasted time" exists if the amount of time wasted is "more than a few seconds"); Dillard v. Chilton Cnty. Comm'n, 495 F.3d 1324, 1330 (11th Cir. 2007) ("[S]tanding is a threshold jurisdictional question which must be addressed . . . independent of the merits of a party's claims." (cleaned up)).

74.     Plaintiff also has standing to sue MediCredit for violation of the FDCPA because Plaintiff suffered an intangible injury of intrusion upon seclusion, Drazen, 74 F.4th 1336 at 1339 (11th Cir. 2023) (finding standing based on intrusion upon seclusion, surmising that "[a] plaintiff who receives an unwanted, illegal text message suffers a concrete injury") and, **critically**, because MediCredit – just as GoDaddy did in Drazen – conceded to arguing against the *degree* of the privacy invasion instead of the *kind* of invasion. *Compare* MTD at 7 (wherein MediCredit claimed the Collection Letter was not an "intrusion upon seclusion" because it was not "repeated with such persistence and frequency as to amount to becomes a substantial burden to his existence") *with* Drazen, 74 F.4th 1336 at 1345 (finding the plaintiff sufficiently suffered an intangible injury based on privacy invasion because "GoDaddy conceded at oral argument that receiving one unwanted text message each day for thirty days would be enough to satisfy the offensiveness element …. And that concession is the whole ballgame").

75.     Further, Plaintiff has plead a *prima facie* case against MediCredit for violation of the FDCPA by sufficiently alleging MediCredit engaged in conduct prohibited by the FDCPA by attempt to collect a debt, by and through the Collection Letter, for which Plaintiff was not legally responsible under Florida's Workers' Compensation Law. *See* Kottler, 460 F. Supp. 3d 1282 at 1293 ("Because Plaintiff was not liable for payment under the Florida's Workers' Compensation Law, unless and until a determination was made otherwise, the statements in the Letter sent to Plaintiff concerning the ability to make  a payment online or by mail, and Defendant's expressed assumption that the debt was valid unless she disputed its validity, constitute false representations of the character or legal status of the RPS debt.").

76.     WHEREFORE, Plaintiff Isaac Heres asks this Court to deny Defendant MediCredit Inc's Motion to Dismiss [Doc. 13] in its entirety, order Defendant MediCredit Inc to file an answer to the First Amended Complaint [Doc. 11], and award any further relief this Court finds proper.

*[REMAINDER OF PAGE INTENTIONALLY BLANK]*

DATED: March 14, 2024

Respectfully Submitted,

 /s/ Thomas Patti
**THOMAS PATTI, ESQ.**
Florida Bar No. 118377
E-mail:    Tom@pzlg.legal
**VICTOR ZABALETA, ESQ.**
Florida Bar No. 118517
E-mail:    Victor@pzlg.legal
PATTI ZABALETA LAW GROUP
3323 Northwest 55th Street
Fort Lauderdale, Florida 33309
Phone:    561-542-8550

COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 14, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

 /s/ Thomas J. Patti
**THOMAS J. PATTI, ESQ.**
Florida Bar No.: 118377