# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. 23-cv-24815-BLOOM/Torres

ISAAC HERES,

     Plaintiff,

v.

MEDICREDIT, INC.,

     Defendant.

_____/

## <u>ORDER ON MOTION TO DISMISS</u>

**THIS CAUSE** is before the Court upon Defendant Medicredit Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim, ECF No. [13] ("Motion"). Plaintiff Isaac Heres filed a Response in Opposition, ECF No. [22], to which Defendant filed a Reply, ECF No. [25]. The Court has reviewed the Motion, the supporting and opposing submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed his initial Complaint on December 19, 2023 and thereafter filed an Amended Complaint on January 25, 2024. ECF No. [11]. Plaintiff asserts a Fair Debt Collection Practices Act ("FDCPA") claim against Defendant for sending Plaintiff a debt letter ("Collection Letter") that falsely represented he owes medical debt. *See generally* ECF No. [11]. The Amended Complaint contains the following allegations:

Plaintiff suffered a workplace injury on January 3, 2021. *Id.* ¶ 7. On July 1, 2021, Plaintiff

sought emergency treatment for the workplace injury at Aventura Hospital and Medical Center. *Id.* ¶ 12. Aventura Hospital is owned and operated by Miami Healthcare. *Id.* ¶ 15. Plaintiff received treatment for his workplace injury at Aventura Hospital and Medical Center on July 1, 2021, including an emergency surgery. *Id.* ¶¶ 16, 17. Miami Healthcare knew the medical services it provided Plaintiff on July 1, 2021, were for the treatment of a workplace injury sustained by Plaintiff on January 3, 2021, and that Plaintiff was therefore not financially responsible for the treatment of his workplace injury. *Id.* ¶¶ 23, 25. Despite knowing Plaintiff was not financially responsible for the treatment of the workplace injury rendered by Miami Healthcare on July 1, 2021, Miami Healthcare sent Plaintiff a bill, totaling $1,337.33, for the treatment Plaintiff received on July 1, 2021. *Id.* ¶ 27, 29. On February 21, 2022, Plaintiff filed suit against Miami Healthcare in Miami-Dade County Court, Case No. 2022-005946-CC-05, for, among other things, unlawfully demanding payment from Plaintiff for the workplace injury and harm suffered by Plaintiff as a result of the medical bill. *Id.* ¶ 35. On October 28, 2022, Plaintiff and Miami Healthcare reached settlement in the state lawsuit." *Id.* ¶ 39. Despite the resolution of the state lawsuit, of which crystallized for Miami Healthcare that it could not attempt to collect the medical debt from Plaintiff, Miami Healthcare contracted with Defendant to collect the medical debt from Plaintiff. *Id.* ¶ 40. Defendant is a business entity engaged in the business of soliciting and collecting consumer debts. *Id.* ¶¶ 41-42.

Plaintiff further alleges that Defendant knew that it did not have any statutory or contractual right to attempt to collect the medical debt from Plaintiff because Florida law shields an employee from financial responsibility. *Id.* ¶ 52. However, Defendant sent a collection letter, internally dated July 29, 2023, to Plaintiff in an attempt to collect the medical debt. *Id.* ¶ 53. The Collection Letter demands payment from Plaintiff for the medical debt. *Id.* ¶ 55.

Plaintiff received and reviewed the Collection Letter. *Id.* ¶ 58. The Collection Letter caused Plaintiff to waste time, as well as lose sleep, because Miami Healthcare knew Plaintiff was not responsible for the medical debt, yet Defendant was still trying to collect the medical debt from Plaintiff. *Id.* ¶ 59. The Collection Letter caused Plaintiff to believe that Defendant was retaliating against Plaintiff on behalf of Miami Healthcare for the state lawsuit. *Id.* ¶ 60. Plaintiff could not afford to pay this debt, and he spent hours anxiously worrying about how he could pay the medical debt, as well as lost sleep over the matter, as a result of the Collection Letter. *Id.* ¶ 62. The Collection Letter disrupted and intruded upon Plaintiff's solitude and peace at home by unlawfully sending a letter to Plaintiff's home address demanding payment of the medical debt. *Id.* ¶ 63. The Collection Letter also caused Plaintiff to falsely believe the medical debt was his responsibility, which caused Plaintiff to lose at least one night of sleep and to expend time and money delivering the Collection Letter to the attorney handling Plaintiff's worker's compensation case. *Id.* ¶¶ 64-66. Plaintiff sent the Collection Letter to his attorney because he anxiously needed feedback regarding the medical debt demanded in the Collection Letter. *Id.* ¶ 66.

Count I asserts Defendant violated § 1692e and § 1692e(2)(A) of the FDCPA by falsely representing the medical debt as Plaintiff's personal responsibility, falsely representing the character of the medical debt, and falsely representing the amount of the medical debt. *Id.* ¶ 76.

**B. Motion to Dismiss**

Defendant primarily argues Plaintiff's Amended Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiff fails to allege he suffered a concrete injury and thus lacks standing to bring this lawsuit. Defendant alternatively contends the Amended Complaint must be dismissed for failing to state an FDCPA claim. Plaintiff responds that he has standing because he alleges the Collection Letter caused him to suffer several tangible and intangible concrete injuries, his injuries are traceable and redressable, and he states a claim under

the FDCPA. Defendant replies that while Plaintiff *identifies* concrete injuries, the Amended Complaint fails to sufficiently allege Plaintiff actually suffered any of those harms. Defendant also argues Plaintiff fails to allege an FDCPA violation as only material misrepresentations are actionable.

## II. LEGAL STANDARD

### A. Motion to Dismiss

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). Accordingly, "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). The party bringing the claim has the burden to establish federal subject matter jurisdiction. *United States ex rel. Brown v. Walt Disney World Co.*, 361 F. App'x 66, 68 (11th Cir. 2010); *Kokkonen*, 511 U.S. at 377 (citing *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11 (1799)); *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-183 (1936)).

Rule 12(b)(1) motions challenging the district court's subject matter jurisdiction come in two forms: facial attacks and factual attacks. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009); *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). A facial attack "requires the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence*, 919 F.2d at 1529 (quoting *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.), *cert. denied,* 449 U.S. 953 (1980)). A factual attack, on the other hand, "challenge[s] 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* When a defendant

launches a factual attack, "the trial court may proceed as it never could under 12(b)(6) or Fed. R.

Civ. P. 56. … no presumptive truthfulness attaches to plaintiff's allegations, and the existence of

disputed material facts will not preclude the trial court from evaluating for itself the merits of

jurisdictional claims." *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981)).

### B.  Standing

"[S]tanding is a threshold question that must be explored at the outset of any case." *Corbett*

*v. Transp. Sec. Admin.*, 930 F.3d 1225, 1232 (11th Cir. 2019). Moreover, "[b]ecause standing is

jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject

matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d

1190, 1203 n.42 (11th Cir. 1991). The party invoking federal jurisdiction has "the burden of

demonstrating that he has standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31. "To enjoy

standing, a plaintiff must satisfy three requirements. First, a plaintiff must establish that she

suffered an injury in fact 'that is concrete, particularized, and actual or imminent.' Second, she

must show that the defendant 'likely caused' her injury. And third, she must show that a favorable

judicial decision can likely redress her injury." *Drazen v. Pinto*, 74 F.4th 1336, 1342 (11th Cir.

2023) (*en banc*) (quoting *TransUnion LLC*, 594 U.S. at 424).

"An injury is concrete if it actually exists—that is, if it is 'real, and not abstract.'" *Hunstein*

*v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1242 (11th Cir. 2022) (*en banc*)

(quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). "The most obvious concrete harm is a

physical injury or financial loss." *Id*. at 1243. "But intangible harms can satisfy Article III's

concreteness requirement, too." *Drazen*, 74 F.4th at 1342 (citing *Hunstein*, 48 F.4th at 1243).

"[O]nce Congress has identified an intangible harm, the question becomes whether that harm has

a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit

in English or American courts." *Id.* (internal quotation omitted)).

## III. DISCUSSION

Defendant mounts a facial attack against Plaintiff, arguing the Court lacks subject-matter jurisdiction because Plaintiff fails to sufficiently allege that he has standing. Defendant contends the Amended Complaint fails to allege Plaintiff suffered a concrete injury.[1] Plaintiff responds that he has standing because the Amended Complaint identifies several tangible and intangible harms, each of which constitute concrete injuries. Defendant replies that although the Amended Complaint *identifies* concrete injuries, it does not allege "any facts that would support an inference that Plaintiff has suffered a tangible injury[.]" ECF No. [22].

### A.  Standing

Defendant focuses its facial attack on the injury in fact or concreteness requirement. Before analyzing Plaintiff's alleged injuries, a brief discussion of what kinds of injuries are considered "real" or "concrete" is warranted. Concrete injuries are "de facto" injuries, namely, injuries that are "real, and not abstract." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (quoting *Spokeo*, 578 U.S. at 340); *see also Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (*en banc*) ("A lot of ink has been spilled to explain what concrete means, but the best word may also be the simplest—'real.'") (citation omitted)). "At the pleading stage of a case, 'general factual allegations of injury' can suffice. But that is not a free pass—these general factual allegations must 'plausibly and clearly allege a concrete injury.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

---

[1] As noted, Defendant argues in the alternative that Plaintiff also fails to state a claim under the FDCPA. Because the Court concludes Plaintiff fails to sufficiently allege he has standing—and that the Court thus lacks subject-matter jurisdiction over his FDCPA claim—it does not consider whether Plaintiff also fails to state a claim under the FDCPA. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("[O]nce a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue.") (internal quotation omitted)).

Further, "Article III standing requires a concrete injury even in the context of a statutory violation[.]" *Spokeo*, 758 U.S. at 341. In other words, a "bare procedural violation, divorced from any concrete harm" does not constitute a concrete injury. *Id.* "Instead, a statutory violation gives rise to an injury in fact only if the violation (1) inflicts some separate concrete harm on the plaintiff or (2) creates a material risk of such harm to the plaintiff." *Muransky*, 979 F.3d at 926-27. A plaintiff also "cannot manufacture standing merely by inflicting harm on themselves[,]" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013), including by "bringing suit for the cost of bringing suit[.]" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

According to Defendant, the Amended Complaint is exactly that: a FDCPA claim alleging a bare procedural violation, with conclusory harms that are reducible to "bringing suit for the cost of bringing suit[.]" *Steel Co.*, 523 U.S. at 107. Plaintiff does not dispute that bare procedural violations fail to confer standing, or that the costs of bringing this action does not constitute a concrete injury. However, Plaintiff contends the Amended Complaint sufficiently alleges numerous tangible and intangible concrete injuries. Regarding tangible injuries, Plaintiff argues he sufficiently alleges he (1) wasted time, (2) wasted money, and (3) suffered emotional distress when he received the Collection Letter. Plaintiff also argues the Collection Letter caused him to suffer an intangible injury, namely, an invasion of his privacy.

As noted, Plaintiff has the burden to demonstrate he has standing to bring his FDCPA claim. *TransUnion LLC*, 594 U.S. at 430-31. To determine if Plaintiff has standing, the Court accordingly must determine whether the Amended Complaint sufficiently alleges any of those harms as a concrete injury. If it does, Plaintiff has standing. If it does not, the Amended Complaint must be dismissed for failing to allege standing, and thus federal jurisdiction. *Cone Corp*, 921 F.2d at 1203 n.42.

>    i.    **Tangible Harms**

Plaintiff argues his allegations of wasted time, money spent, and emotional distress constitute tangible injuries that "separately and independently" satisfy the injury-in-fact requirement. ECF No. [22]. For support, Plaintiff relies on *Walters v. Fast AC, Ltd. Liab. Co.*, 60 F.4th 642 (11th Cir. 2023) and *Toste v. Beach Club at Fontainebleau Park Condo. Ass'n, Aventura, P.A.*, Case No. 21-14348, 2022 WL 4091738 (11th Cir. 2022).

In *Walters*, the plaintiff brought a Truth in Lending Act ("TILA") claim and related state law claims alleging the defendant loan servicer misrepresented the sum and conditions of a loan. 60 F.4th 642 at 645. The district court granted summary judgment on the plaintiff's TILA claim after finding the plaintiff failed to allege a concrete injury and consequently lacked standing. *Id.* at 647. The district court found the plaintiff's testimony describing the following injuries failed to establish the plaintiff suffered a concrete injury: "(1) he was forced to spend time disputing his debt; (2) his credit took a hit, preventing him from making other purchases or refinancing his home; (3) he spent money faxing documents to his attorney; and (4) he felt anxious, exploited, embarrassed, and worthless." *Walters*, 60 F.4th 642 at 648. The Eleventh Circuit reversed, finding each of those harms constitute "garden-variety injuries under Article III." *Id.* at 649. As *Walters* explains:

> Our precedent recognizes each of these harms as a concrete injury in fact. We have held that such injuries include not only "straightforward economic injuries," like lost money, but also "more nebulous" ones, *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1338 (11th Cir. 2021), like wasted time … and emotional distress. *See, e.g., Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021) ("[T]here is no question that wasted time is a concrete harm….").

*Id.* at 648. The Eleventh Circuit accordingly concluded the plaintiff's "deposition testimony describing his lost time, economic harm, and emotional distress was sufficient evidence of those

injuries to survive summary judgment." *Id.* (citing *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937 943 (11th Cir. 2021)).

In *Toste*, the plaintiff brought three FDCPA claims, including a claim asserting a law firm falsely represented the amount of debt the plaintiff owed for missed condominium payments in a collection letter. *Toste*, 2022 WL 4091738, at *1. The plaintiff believed the amount demanded in the letter was excessive, consulted with an attorney and an accountant to determine what he owed and the consequences of nonpayment, and proceeded to hire the same attorney to sue the condominium association and law firm for violating the FDCPA. *See id*. The district court granted the defendant's motion to dismiss upon finding the plaintiff "had not demonstrated an injury in fact." *Id.*, at *4. The court rested its conclusion in part on its finding that the plaintiff's "emotional damages and the time he spent trying to discover the true amount of his debt … [were] too insubstantial." *Id.*

The Eleventh Circuit reversed, finding that the plaintiff's allegations of wasted time and emotional distress constituted a concrete injury:

> We have explained that a plaintiff's wasted time, in particular, can be a concrete injury for standing purposes. *Salcedo*, 936 F.3d at 1173; *see Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017). For example, we have found that a plaintiff stated a tangible injury for standing purposes where she alleged that she "lost time" trying to correct inaccuracies in her credit report. *Pedro*, 868 F.3d at 1280. And while we have not yet decided in a published opinion whether emotional distress alone is a sufficiently concrete injury for standing purposes, we have found standing where the plaintiff experienced both emotional distress manifesting in a loss of sleep and wasted time spent resolving problems caused by the defendant's mistakes. *See Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021). Those are some of the same injuries Toste testified to here.

*Id.* The court also rejected the defendants' argument that the plaintiff's injury was insufficient because it simply reflects the costs of bringing his lawsuit:

> We recognize that, as the defendants have argued, the time and money that Toste spent on the FDCPA lawsuit itself cannot give rise to a concrete injury for Article

III standing purposes. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) ("a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit"). But here, Toste initially consulted with an attorney at least in part to help him accurately calculate his debt to the association, to advise him of the legal consequences of paying (or not paying) the sums demanded …. Time or money spent in defending against a legal action taken by a debt collector against the debtor is separable from the costs of bringing the debtor's own lawsuit. "Because there is no question that wasted time is a concrete harm, Toste has standing to pursue his claims so long as even a small part of the injury is attributable to" the defendants.

*Id.* The Eleventh Circuit thus concluded the plaintiff had standing to bring his FDCPA claim because "time spent trying to determine the correct amount of his debt, resolve the lien, and avoid the threatened foreclosure," as well as his accompanying "emotional distress manifesting in a loss of sleep" constitutes a concrete injury. *Id.*

Plaintiff argues *Walters* and *Losch* demonstrate his allegations of wasted time, wasted money, and emotional distress in the form of anxiety and lost sleep are all concrete injuries. The Amended Complaint identifies each of those harms, *see* ECF No. [11] ¶¶ 59, 62, 65-66, and makes clear those harms were caused by Defendant sending the Collection Letter. Defendant replies that it does not dispute that wasted time, wasted money, and emotional distress *may* constitute concrete injuries under controlling precedent. However, Defendant contends Plaintiff's allegations regarding those harms are conclusory and thus fail to allege "sufficient factual matter demonstrating an injury-in-fact." ECF No. [25] at 3. The Court first analyzes Plaintiff's allegations regarding the time and money he spent upon receiving the Collection Letter.

### 1. Wasted Time and Money

Plaintiff accurately observes the tangible harms identified in the Amended Complaint are concrete injuries—wasted time, wasted money, related emotional distress manifesting in a loss of sleep. *See Salcedo*, 936 F.3d at 1173 (wasted time); *Losch*, 995 F.3d at 943 (wasted time and emotional distress manifesting in loss of sleep); *Toste*, 2022 WL 4091738, at *9 (same); *see also*

*Hunstein*, 48 F.4th at 1243 (observing "financial loss" constitutes an "obvious concrete harm"). As Defendant points out, however, Plaintiff's allegations regarding those harms are conclusory.

Regarding wasted time and money, Plaintiff simply alleges he "expended time and money delivering the Collection Letter to the attorney handling Plaintiff's worker's compensation case, as Plaintiff anxiously needed feedback regarding the Medical Debt demanded in the Collection Letter." ECF No. [11] ¶ 66; *see also id.* ¶ 59 ("The Collection Letter caused Plaintiff to waste time, as well as lose sleep, because … Defendant was still trying to collect the Medical Debt from Plaintiff."). The Amended Complaint is silent as to whether Plaintiff ever *received* any feedback, however. It also entirely lacks allegations describing the amount of time and money spent or how that time and money was spent. For example, other than Plaintiff's reference to "anxiously need[ing] feedback[,]" the Amended Complaint fails to allege whether Plaintiff later discussed the Collection Letter with his attorney or how much time was spent doing so.

Plaintiff is correct that very little time or money must be spent for a plaintiff to suffer a concrete injury. *See, e.g.*, *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021) (observing a plaintiff who "spent at most an hour dealing with his dispute to Experian [ ]" suffered a concrete injury because "there is no question that wasted time is a concrete harm …."); *Salcedo v. Hanna*, 936 F.3d 1162, 1173 (11th Cir. 2019) (noting Eleventh Circuit precedent "strongly suggest[s] that concrete harm from wasted time requires, at the very least, more than a few seconds.") (citations omitted)). However, as Defendant observes, *Walters* and *Toste* each featured plaintiffs who—depending on the procedural posture—provided *specific* allegations or evidence regarding time spent, money wasted, and associated feelings of emotional distress. In both cases, the Eleventh Circuit rejected arguments that the plaintiff merely alleged a bare procedural violation

with no underlying concrete injury. Unlike here, however, those plaintiffs supported their alleged injuries with factual details, not conclusory allegations.

*Toste* aptly illustrates the Amended Complaint's deficiencies. As discussed, the plaintiff in *Toste* provided specific allegations regarding his alleged harms, namely, that he believed the sum demanded in the debt letter was excessive, proceeded to consult with an attorney and an accountant to determine what he actually owed, and later hired the same attorney to file his FDCPA claim.[2] *See* 2022 WL 4091738, at *1, *4.

The Eleventh Circuit acknowledged "the time and money that Toste spent on the FDCPA lawsuit itself cannot give rise to a concrete injury for Article III standing purposes." *Id.*, at *4 (citing *Steel Co.*, 523 U.S. at 107). However, the court found the plaintiff's allegations clearly alleged concrete injuries in the form of wasted time and money:

> But here, Toste initially consulted with an attorney at least in part to help him accurately calculate his debt to the association, to advise him of the legal consequences of paying (or not paying) the sums demanded …. Time or money spent in defending against a legal action taken by a debt collector against the debtor is separable from the costs of bringing the debtor's own lawsuit.).

*Id.* The court thus concluded "'[b]ecause there is no question that wasted time is a concrete harm, Toste has standing to pursue his claims so long as even a small part of the injury is attributable to' the defendants." *Id.* (quoting *Losch*, 995 F.3d at 943).

The Court cannot similarly conclude Plaintiff's allegations demonstrate he suffered a concrete harm. As in *Toste*, Plaintiff "has standing to pursue his claims so long as even a small

---

[2] Unlike here, "the defendant raised a factual challenge to subject matter jurisdiction (rather than a facial challenge)," which prompted the plaintiff to file an affidavit in response to the defendant's motion to dismiss. *Toste*, 2022 WL 4091738, at *2. The plaintiff also relied on his deposition testimony detailing his alleged injuries. *Id.* As the Eleventh Circuit observed, "the district court was free to go beyond the complaint and examine record evidence such as depositions and affidavits, and we do the same." *Id.*, at *2 n.3. Because Defendant launches a facial attack, the Court's inquiry is limited to the sufficiency of Plaintiff's allegations. *See Lawrence*, 919 F.2d at 1529.

part of the injury is attributable to' the defendants."[3] *Id.* (quoting *Losch*, 995 F.3d at 943). "[T]here

is no question that wasted time is a concrete harm," *Losch*, 995 F.3d at 943, and Eleventh Circuit

precedent "strongly suggests" the amount of time wasted can be little "more than a few seconds."

*Salcedo*, 936 F.3d at 1173. Plaintiff also need not show he wasted substantial sums of money, as

financial losses are plainly concrete harms. *Hunstein*, 48 F.4th at 1243. As noted, however, the

Amended Complaint is silent as to how much time or money Plaintiff spent, or how he wasted that

time or money. Plaintiff alleges he "expended time … delivering the Collection Letter" to his

attorney because he "anxiously needed feedback[.]" ECF No. [11] ¶ 66. Plaintiff fails to allege

whether he ever received any feedback from his attorney, however, or whether he wasted any time

beyond simply sending the Collection Letter to his attorney. The same is true regarding wasted

money. *See id.* It is thus also unclear whether Plaintiff's wasted money extends beyond simply

sending the Collection Letter to his attorney.

Those details are essential. As the Eleventh Circuit observed in *Toste*, "the time and money

that [Plaintiff] spent on the FDCPA lawsuit itself cannot give rise to a concrete injury for Article

III standing purposes." 2022 WL 4091738, at *4 (citing *Steel Co.*, 523 U.S. 83 at 107 ("a plaintiff

cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing

suit")). The plaintiff in *Toste* clearly alleged he wasted time "in defending against a legal action

taken by a debt collector[.]" *Id.* The court concluded the plaintiff suffered a concrete harm because

that wasted time was clearly "separable from the costs of bringing the debtor's own lawsuit." *Id.*

---

[3] The Court is unpersuaded by Defendant's argument that Plaintiff also lacks standing because his alleged harms are not traceable to Defendant. As *Losch* makes clear, Plaintiff "has standing to pursue his claims so long as even a small part of the injury is attributable to" Defendant. 995 F.3d at 943. The Amended Complaint clearly alleges the Collection Letter caused Plaintiff to waste time, waste money, and suffer anxiety *because* Defendant sent the Collection Letter. *See* ECF No. [11] ¶¶ 62-66. Although the Court agrees Plaintiff fails to sufficiently allege those harms are concrete injuries, the Amended Complaint plainly alleges at least "a small part" of those injuries can be attributed to Defendant sending the Collection Letter. *Losch*, 995 F.3d at 943.

Here, the opposite is true. Plaintiff simply alleges he wasted time or money "delivering the Collection Letter to his attorney." ECF No. [11] ¶ 66. The Court accordingly cannot conclude that Plaintiff wasted *any* time or money beyond "the cost of bringing suit." *Steel Co.*, 523 U.S. at 107. *Toste* is thus instructive, as Plaintiff fails to sufficiently allege he suffered concrete harms in the form of wasted time or money.

The Court is similarly unpersuaded by Plaintiff's reliance on *Walters*. In *Walters*, the Eleventh Circuit acknowledged "the 'now-familiar admonition' that a procedural statutory violation, standing alone, does not amount to a concrete injury in fact." 60 F.4th at 648 (quoting *Muransky*, 979 F.3d at 929). However, the court found the plaintiff's evidence of concrete injuries established the plaintiff suffered more than a bare procedural violation:

> These authorities do not support FTL's position. They share a dispositive feature that is missing here: they each involved a "bare procedural violation" and no "concrete harm." *Spokeo*, 578 U.S. at 341, 136 S.Ct. 1540. None involved a plaintiff who, like Walters, identified concrete harms in addition to a statutory violation. *See, e.g.*, *TransUnion*, 141 S. Ct. at 2210 (holding "[t]he mere presence of an inaccuracy in an internal credit file" in violation of federal statute inflicts "no concrete harm" unless it is "disclosed to a third party"); *Muransky*, 979 F.3d at 929 (holding unlawfully printing customers' credit card numbers on receipts was not "by itself ... a concrete injury"). Walters's injuries go beyond FTL's noncompliant disclosures—he provided evidence of lost time, money, and peace. These are garden-variety injuries in fact under Article III.

*Id.* at 649. The court accordingly concluded "that when a plaintiff establishes that he personally suffered an actual, concrete harm, as Walters did here, the injury-in-fact analysis is complete." *Id.*

As noted, the Eleventh Circuit found the plaintiff suffered a concrete injury based on "evidence of lost time, money, and peace[,]" namely, the plaintiff's testimony detailing the time he wasted, the money he spent, and his related feelings of emotional distress. *See id.* at 648-49. As discussed, Plaintiff's conclusory allegations of wasted time and money fail to allege a harm beyond the costs of bringing this action. *See* ECF No. [11] ¶ 66. Plaintiff's allegations are closer to the

authorities involving "a 'bare procedural violation' and no 'concrete harm.'" *Walters*, 60 F.4th at 648 (quoting *Spokeo*, 578 U.S. at 341); *see TransUnion*, 594 U.S. at 434 (holding "[t]he mere presence of an inaccuracy in an internal credit file" is "no concrete harm" unless and until it is "disclosed to a third party"); *see also Muransky*, 979 F.3d at 929 (holding unlawfully printing customers' credit card numbers was not "by itself ... a concrete injury"). Plaintiff has clearly alleged a procedural violation of the FDCPA. *See generally* ECF No. [11] ¶¶ 68-77. As discussed, however, the additional harms identified in the Amended Complaint fail to show Plaintiff wasted time or money outside of bringing this action. *Walters* accordingly fails to support finding Plaintiff sufficiently alleges that he suffered a concrete injury.[4]

The Court is mindful that while Plaintiff "cannot establish constitutional standing based solely on the defendant's 'bare violation of a statute,' he can do so by showing that the violation caused him some real harm[.]" *Toste*, 2022 WL 4091738, at *4. As the Eleventh Circuit observed, "in this context, 'very nearly any level of direct injury is sufficient to show a concrete harm.'" *Id.* (citing *Muransky*, 979 F.3d at 920, 927; *Salcedo*, 936 F.3d at 1167 ("A concrete injury need be only an 'identifiable trifle.'") (quoting *United States v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S. 669, 689 n.14 (1973))). However, "statutory violations do not—cannot—give us permission to offer plaintiffs a wink and a nod on concreteness." *Muransky*, 979 F.3d at 924 (citing *Spokeo*, 578 U.S. at 340-41). Plaintiff instead "must show, and the courts must ensure, that an alleged injury is concrete, or else we have no jurisdiction to consider it." *Id.* Plaintiff fails to sufficiently allege he suffered even a trifling harm here.

---

[4] *Losch* and *Pedro* are also instructive. As in *Toste*, and unlike here, the plaintiffs in both cases were clearly harmed by wasting time that was separable from the costs of bringing suit. *See Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021) (the plaintiff "testified that he spent at most an hour dealing with his dispute to Experian ....") (record citation omitted)); *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017) ("Pedro also alleged a concrete injury because she alleged that she lost time ... attempting to resolve the credit inaccuracies.") (internal quotation omitted)).

### 2. Emotional Distress – Anxiety, Loss of Sleep

Plaintiff's remaining "tangible" harm consists of experiencing emotional distress, namely, anxiety manifesting in a loss of sleep. The Amended Complaint alleges "[t]he Collection Letter caused Plaintiff to waste time, as well as lose sleep, because Miami Healthcare knew Plaintiff was not responsible for the Medical Debt, yet Defendant was still trying to collect the Medical Debt from Plaintiff." *Id.* ¶ 59; *see also id.* ¶ 62 ("Plaintiff spent hours anxiously worrying about how he could pay the Medical Debt, as well as lost sleep over the matter, as a result of the Collection Letter."); *id.* ¶ 65 ("The Collection Letter caused Plaintiff to lose at least one night of sleep.). Unlike Plaintiff's allegations of wasted time and money, the Amended Complaint thus provides some details on those harms: Plaintiff "spent hours anxiously worrying" about the Collection Letter and lost "at least one night of sleep." *Id.* ¶¶ 62, 65.

Plaintiff argues "the time wasted by Plaintiff through hours of emotional distress and lost sleep as a direct result of the Collection Letter" also constitutes a concrete injury. ECF No. [22] at 12. Plaintiff again relies on *Toste* for support. As Defendant correctly points out, however, *Toste* found emotional distress manifesting in lost sleep is properly considered a concrete harm because the plaintiff "experienced *both* emotional distress manifesting in a loss of sleep *and* wasted time spent resolving problems caused by the defendant's mistakes." 2022 WL 4091738, at *4 (citing *Losch*, 995 F.3d at 943) (emphasis added)). The Eleventh Circuit explicitly noted it has "not yet decided in a published opinion whether emotional distress alone is a sufficiently concrete injury for standing purposes." *Id.* As discussed, the Court concludes Plaintiff fails to sufficiently allege he suffered a concrete harm in the form of wasted time. *Toste* and *Losch* accordingly fail to support finding Plaintiff's emotional distress, without more, constitutes a concrete harm.

Plaintiff otherwise fails to support his position that the emotional distress he experienced is properly characterized as a concrete injury. For its part, Defendant observes courts in this District have found feelings of distress and anxiety alone fail to demonstrate a plaintiff suffered a concrete injury. *See Luce v. LVNV Funding LLC*, 2023 WL 1472582, at *5 (S.D. Fla. Jan. 18, 2023), *report and recommendation adopted*, 2023 WL 1466815 (S.D. Fla. Feb. 2, 2023) ("Without more, Plaintiff's statements that he feels stress, worry, anxiety, frustration, and anger because Defendant failed to remove the dispute notation is not sufficiently concrete and particularized to establish Article III standing.") (citations omitted)); *Preisler v. Eastpoint Recovery Group, Inc.*, 2021 WL 2110794, at *3 (S.D. Fla. 2021) (holding the alleged injury of "distress and anxiety" caused by the word "enforce" included in a letter was insufficient to establish standing) (citing *Trichell*, 964 F.3d at 997; *Spokeo*, 136 S. Ct. at 1549)). Plaintiff accordingly fails to show he suffered a concrete injury where, as here, he alleges experiencing feelings of emotional distress without sufficiently alleging he suffered related tangible injuries.[5]

### ii.   Intangible Harm – Invasion of Privacy

Plaintiff also argues the Collection Letter caused him to suffer an intangible concrete injury, namely, the invasion of his privacy. Defendant's Motion acknowledges invasions of privacy *may* constitute intangible harms. However, Defendant contends Plaintiff's allegation that "[t]he Collection Letter disrupted and intruded upon Plaintiff's solitude and peace at home[,]" ECF No. [11] ¶ 63, fails to demonstrate Plaintiff suffered a concrete injury. According to Defendant, this allegation fails to establish Plaintiff suffered a concrete intangible injury because (1) Plaintiff

---

[5] Plaintiff asserts his anxiety and lost sleep stem from two distinct beliefs: (1) his belief Defendant sent the Collection Letter to retaliate against him, and (2) his false belief that he owed the medical debt described in the Collection Letter. As discussed, however, Plaintiff fails to provide any support for his position that feelings of anxiety manifesting in lost sleep constitutes a distinct, tangible concrete injury. Plaintiff accordingly fails to show his anxiety and lost sleep constitutes a concrete injury regardless of the source of those symptoms.

does not allege he suffered a *substantial* intrusion, and (2) receiving a piece of mail is distinct from the type of non-physical intrusions upon seclusion recognized at common law. Plaintiff responds that the Collection letter is analogous to the kind of privacy intrusions recognized at common law, which demonstrates the Collection Letter caused him to suffer a concrete privacy invasion regardless of its degree of intrusiveness. Plaintiff relies on the Eleventh Circuit's recent decision in *Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023) (*en banc*) for support. Defendant replies that *Drazen* is distinguishable, and that Plaintiff lacks support for his position that receiving a debt letter constitutes an actionable invasion of privacy.

In *Drazen*, the Eleventh Circuit held "[a] plaintiff who receives an unwanted, illegal text message suffers a concrete injury." *Id.* at 1339. The plaintiffs in *Drazen* alleged the defendant committed class-wide violations of the Telephone Consumer Protection Act ("TCPA"). *Id.* Relying on the Eleventh Circuit's decision in *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), "which held that the 'receipt of a single text message' is not a concrete injury[,]" *id.* at 1340, both the district court and the Eleventh Circuit initially concluded class members who only received a single text message did not suffer a concrete injury, and thus lacked standing. *Id.* at 1340-42. However, the Eleventh Circuit granted the plaintiff's motion for an *en banc* rehearing in order to revisit its prior holding in *Salcedo*. *See id.*

As *Drazen* explains, "intangible harms can satisfy Article III's concreteness requirement, too." *Id.* at 1342. "[O]nce Congress has identified an intangible harm, the question becomes whether that 'harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" *Id.* (citing *Hunstein*, 48 F.4th at 1243). Moreover, "[t]he Supreme Court has acknowledged the harm associated with the common-

law tort of intrusion upon seclusion as an example of a harm 'traditionally recognized as providing a basis for lawsuits in American courts.'" *Id.* (quoting *TransUnion*, 141 S. Ct. at 2204).

The Eleventh Circuit found the harm identified by the TCPA—protecting consumers from invasions of privacy caused by unwanted telemarketing texts and phone calls—has a close relationship with the tort of intrusion upon seclusion. *Id.* at 1345. In so doing, the *en banc* court rejected the defendant's argument that receiving a single text message is insufficient because it lacks the same *degree* of offensiveness as the underlying harm of intrusion upon seclusion. *See id.* at 1343. The Eleventh Circuit instead adopted the approach of most Circuits, which requires asking "whether the harms are similar in *kind* but not *degree*[.]" *Id.* at 1344 (emphasis added). Because the court found the TCPA provides a remedy for the same *kind* of harms as the tort of intrusion upon seclusion—invasions of privacy that are generally considered offensive—it concluded the plaintiffs suffered concrete injuries even if those injuries were of a lesser *degree* than intrusions upon seclusion recognized at common law. *See id.* at 1343-45.

Plaintiff argues the Collection Letter caused him to suffer a concrete harm because, like the receipt of a single unwanted text message, receiving a single unwanted debt letter is the same kind of harm as an intrusion upon seclusion. As Plaintiff accurately observes, both the TCPA and FDCPA identify invasions of privacy as harms the statutes seek to remedy. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 15 U.S.C. 1692(a). Like the defendant in *Drazen*, Plaintiff argues Defendant's contention that receiving a single unwanted debt letter is too insubstantial of an intrusion amounts to a concession that unwanted letters are the same *kind* of harm as intrusions upon seclusion. Plaintiff thus contends *Drazen* supports finding receiving a single unwanted debt letter constitutes a concrete intrusion upon seclusion regardless of the number of letters, or degree of that intrusion. Defendant replies that receiving an unwanted debt letter is *not* the same kind of harm as an

intrusion upon seclusion, and that Plaintiff accordingly fails to allege he suffered a concrete intangible injury.

The Court agrees with Defendant. Plaintiff is correct that "the *degree* of offensiveness required to state a claim for intrusion upon seclusion at common law" is irrelevant for standing purposes. *Drazen*, 74th F.4th at 1344 (emphasis in original). The proper inquiry is instead to determine whether the harm identified by the FDCPA—here, prohibiting debt collectors from sending false debt letters—attempts to remedy the same *kind* of harm as an intrusion upon seclusion. *See id.* ("[W]e should ask whether the harms share "a 'close relationship' in kind, not degree.") (quoting *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.)).

The differences between Plaintiff's FDCPA claim and the TCPA claim in *Drazen* illustrate the problems with Plaintiff's theory. As *Drazen* observes, "the relationship between the harms we compare is too attenuated when a plaintiff 'completely fails to allege an element essential to the harm set out as a common-law comparator.'" *Id.* at 1343 (quoting *Hunstein*, 48 F.4th at 1249). Here, we must compare the tort of intrusion upon seclusion to the privacy invasion caused by receiving unsolicited debt letters. "Intrusion upon seclusion consists of an (i) intentional intrusion (ii) into another's solitude or seclusion, (iii) which would be highly offensive to a reasonable person." *Id.* at 1345 (citing Restatement (Second) of Torts, § 652B; *Jackman v. Cebrink-Swartz*, 334 So. 3d 653, 656 (Fla. 2nd DCA 2021)).

*Drazen* proceeded to compare unwanted text messages with those elements, as well as harms traditionally recognized as intrusions upon seclusion at common law. The Eleventh Circuit notes most of its sister Circuits also found "receiving either one or two unwanted texts or phone calls resembles the *kind* of harm associated with intrusion upon seclusion." *Id.* at 1344 (collecting cases). As *Drazen* points out, "[u]nwanted phone calls, as we've noted, are among the privacy

intrusions that give rise to liability for intrusion upon seclusion." (citing Restatement (Second) of Torts, § 652B cmt. d; W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* 855 (5th ed. 1984)); *see also Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019) (finding receiving "more than one unwanted telemarketing call" causes a harm that has "a close relationship to the kind of harm" caused by intrusions upon seclusion)). *Drazen* relied on these well-established findings to readily conclude unwanted text messages present similar intrusions upon seclusion. The Eleventh Circuit accordingly found that "as with 'the unwanted ringing of a phone from a phone call,' the 'undesired buzzing of a cell phone from a text message ... is an intrusion into peace and quiet in a realm that is private and personal.'" *Id.* (quoting *Gadelhak*, 950 F.3d at 462 n.1). In short, because the difference between the harms caused by unwanted texts and intrusions upon seclusion was simply one of degree, not kind, *Drazen* concluded receiving a single text message constitutes a concrete injury.

Plaintiff fails to show the same is true here. Unlike telemarking calls and text messages, Plaintiff lacks support for his position that receiving an unwanted debt letter causes the same kind of harm as an intrusion upon seclusion at common law. As Defendant points out, Plaintiff fails to provide a single case where a court found receiving a single letter constitutes an intentional intrusion upon one's seclusion. *Drazen* is therefore distinguishable, as the Eleventh Circuit rested its finding on numerous decisions finding telemarketing text messages and telephone calls constitute similar privacy intrusions. *Id.* at 1344 (collecting cases). Moreover, unlike telephone calls, unsolicited mailings are generally not considered intrusions upon one's seclusion. *Compare* Restatement (Second) of Torts § 652B cmt. d (explaining telephone calls demanding "payment of a debt" can constitute intrusions upon seclusion) *with id.* at rep. n. to cmt. d ("Unsolicited mailings do not constitute an actionable intrusion.") (citations omitted)).

Plaintiff does not articulate how receiving a single letter is akin to the "undesired buzzing of a cell phone from a text message" such that the Collection Letter can be considered a similar "intrusion into peace and quiet in a realm that is private and personal." *Gadelhak*, 950 F.3d at 462 n.1 (Barrett, J.). As noted, the Amended Complaint simply alleges "[t]he Collection Letter disrupted and intruded upon Plaintiff's solitude and peace at home[,]" ECF No. [11] ¶ 63. Even assuming a debt letter *could* constitute a similar privacy invasion as an intrusion upon seclusion— a position Plaintiff does not support—Plaintiff's conclusory allegation fails to show he suffered such a harm.

*Drazen* does not support finding Congress elevated receiving a single debt letter to the level of a concrete harm simply because the FDCPA generally identifies privacy invasions as harms it seeks to remedy.[6] As discussed, Plaintiff fails to show receiving a single debt letter is like receiving an unwanted telephone call, text message, or other acknowledged intrusion upon one's seclusion. Accordingly, although Plaintiff is correct that the Court's inquiry focuses on whether these harms are similar in kind, not degree, Plaintiff fails to show the Collection Letter establishes he suffered a similar privacy invasion here.

### B.  No Futility in Amended Complaint

District courts "have broad discretion in permitting or refusing to grant leave to amend."

---

[6] The Eleventh Circuit's *en banc* decision in *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236 (11th Cir. 2022) reinforces this conclusion. *Hunstein* rejected the argument that "a creditor sending information" about a plaintiff's "debt to a mail vendor" is "analogous to the common-law tort of public disclosure." *Id.* at 1240. The court acknowledged Congress "targeted 'invasions of individual privacy 'when it passed'" the FDCPA. *Id.* at 1248 (citing 15 U.S.C. § 1692(a)). However, as *Hunstein* observes, "even assuming—which we do not—that Congress was attempting to target the workaday vendor relationships alleged here, congressional intent does not automatically transform every arguable invasion of privacy into an actionable, concrete injury." *Id.* The same is true here. Plaintiff assumes the FDCPA targets unsolicited debt letters *because* they are invasions of privacy without supporting this idea, let alone his position that sending a debt letter is sufficiently intrusive to constitute "an actionable, concrete injury." *Id.* Plaintiff instead attempts to hammer a "square cause of action into [a] round tort[ ]." *Muransky*, 979 F.3d at 931. Consistent with *Hunstein*, the Court concludes "it just does not fit." *Id.* at 1241.

*Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Leave to amend should be "freely given" absent a showing of "futility of amendment." *Id.* at 1270 (citing *Foman*, 371 U.S. at 182). When an amended complaint would still be "properly dismissed or be immediately subject to summary judgment for the defendant," a district court could determine that leave to amend the complaint is futile. *Cf. Rivas v. Bank of N.Y. Mellon*, 777 F. App'x 958, 965 (11th Cir. 2019) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)).

As discussed above, Plaintiff fails to sufficiently allege he suffered either a tangible or intangible concrete harm. However, the Amended Complaint does *identify* cognizable concrete harms, particularly wasted time and money. Further, "in this context, 'very nearly any level of direct injury is sufficient to show a concrete harm.'" *Toste*, 2022 WL 4091738, at *4 (citing *Muransky*, 979 F.3d at 920, 927); *see also Salcedo*, 936 F.3d at 1167 ("A concrete injury need be only an 'identifiable trifle.'") (quoting *SCRAP*, 412 U.S. at 689 n.14)). Accordingly, while Plaintiff's conclusory allegations fail to show he suffered a concrete harm, it is certainly plausible that he has. The Court thus concludes Plaintiff should be granted leave to amend. If Plaintiff indeed suffered a concrete injury that is separable from both a "bare procedural violation," *Spokeo*, 758 U.S. at 341, and "the cost of bringing suit[,]" *Steel Co.*, 523 U.S. at 107, then leave to amend is proper.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss, **ECF No. [13]**, is **GRANTED**.

2. Plaintiff's Amended Complaint, **ECF No. [11]**, is **DISMISSED WITHOUT PREJUDICE**.

3.  Plaintiff shall file a Second Amended Complaint consistent with this Order by **July 16, 2024**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 2, 2024.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies To:

Counsel of Record